UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GILBERT POLO, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

GOODING'S SUPERMARKETS, E*TRADE BANK, and E*TRADE ACCESS, INC.,

    Defendants.
_____/

CASE NO: 6:03-CV-134-ORL-28 JGG

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

    Plaintiff Gilbert Polo claims he was overcharged 50 cents for an automated teller machine ("ATM") transaction. With no specific allegation that this error occurred more than once, Plaintiff has filed a purported nationwide class action as a result of his alleged injury.

    Plaintiff could have utilized a simple statutory right to obtain redress from his bank; instead, he chose to sidestep these procedures and launch a putative nationwide class action. The Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§1693 *et seq.* (which regulates posting of ATM fees) requires that Mr. Polo's financial institution promptly investigate and compensate him for any overcharge. Despite being armed with this means to obtain full relief, Plaintiff chose to bypass the statutory resolution process. Because Plaintiff failed to exhaust this simple process, as described below, his suit should be dismissed.

Plaintiff also makes a defective request for injunctive relief. The EFTA, however, expressly authorizes recovery of money damages but makes no provision for equitable or injunctive relief. Plaintiff is strictly foreclosed from pursing remedies Congress did not authorize.

For these reasons, defendants E*TRADE Access, Inc. and E*TRADE Bank respectfully request that the Court (1) dismiss Plaintiff's lawsuit in its entirety; or (2) in the alternative, dismiss his demand for injunctive relief.[1]

## BACKGROUND

### I. THE ELECTRONIC FUND TRANSFER ACT

Plaintiff brings suit under the EFTA to recover for the alleged 50 cent overcharge alleged in the Complaint. E*TRADE outlines the key statutory provisions.

#### A. The EFTA Governs "Financial Institutions" and "ATM Operators"

EFTA imposes obligations on "financial institutions" and "ATM operators." The financial institution is the bank at which the customer maintains an account and which the customer accesses through an ATM. 15 U.S.C. § 1693a(8). The "ATM operator" is the store or business where the ATM is located and which makes the ATM available to a consumer. 15 U.S.C. § 1693b(d)(3)(D)(i).

The respective roles of the financial institution and ATM operator are well-known. ATMs are connected to the computer systems of financial institutions through any

---

[1] E*TRADE Bank has also today filed a separate Motion to Dismiss because it does not operate ATMs and was improperly included in this lawsuit. It joins this Motion in the event that the Court does not grant its individual Motion.

one of several branded data networks, such as "MOST" and "PLUS."[2] An ATM operator usually charges the consumer a transaction fee for the right to access the consumer's account at a financial institution. Plaintiff's lawsuit involves the amount of the transaction fee he allegedly paid his ATM transaction.

### B. The EFTA Imposes Numerous Obligations on Financial Institutions

Financial institutions stand at the center of the transactions that consumers undertake at ATMs. For that reason, the EFTA regulates the financial institutions closely and places extensive obligations on them.

For example, financial institutions must provide written documentation to consumers of each electronic transfer of funds to or from their accounts, "at the time transfer is initiated" — in other words, a receipt of the transaction. 15 U.S.C. § 1693d(a). Financial institutions also must provide "periodic statements" of transactions and balances for the accounts. *Id.* § 1693d(c). Financial institutions also must disclose in writing all terms and conditions regarding electronic transfers to or from a consumer's account (§ 1693c). The EFTA imposes liability on financial institutions for any unauthorized electronic withdrawals from an account (§ 1693h). Financial institutions must limit the issuance of cards having electronic access to an account (§1693i). Financial institutions cannot require consumers to waive any of their rights under the EFTA (§ 1693l). Finally, the EFTA gives the Federal

---

[2] Thus, a consumer can access his or her account at a financial institution by using an ATM operator's ATM even when the ATM operator is not affiliated with the consumer's financial institution.

Reserve Board authority to promulgate regulations implementing the EFTA, including issuance of model clauses to be used in their contracts with consumers (§ 1693b(b)).

### C. EFTA Requires ATM Operators to Disclose Their Transaction Fees

In contrast to the extensive regulation of financial institutions, EFTA contains only a brief provision governing ATM operators. An ATM operator must disclose to the consumer the fee that the ATM operator will impose for each ATM transaction. The fee must be disclosed (1) in writing at or near the ATM; and (2) on the ATM display screen at some point in the transaction before the consumer is irrevocably committed to the transaction, and at which time the consumer must consent to the fee. 15 U.S.C. § 1693b(d)(3)(B). An ATM operator may charge a transaction fee only if it has been properly noticed and if the consumer accepted it. *Id.* § (d)(3)(C).

## II. CONGRESS CREATED AN ERROR-RESOLUTION PROCESS TO ADDRESS CONSUMER COMPLAINTS

Congress recognized that errors can occur given the volume of transactions that occur at ATMs nationwide. It therefore codified in the EFTA an error resolution procedure under which financial institutions must promptly investigate and promptly resolve all consumer complaints about unauthorized withdrawals from their accounts. The error resolution procedure is both simple and speedy.

The error-resolution process applies anytime a consumer believes an "error" has occurred regarding an electronic bank transaction. EFTA defines "error" very broadly: it can include any improper withdrawal of money from the account, such as "an unauthorized electronic fund transfer" or "an incorrect electronic fund transfer from or to the consumer's

account." 15 U.S.C. § 1693h(f). The consumer may also lodge complaints about a "computational error" or "receipt of an incorrect amount of money" from an ATM. *Id.*

Congress envisioned that the error-resolution process would begin when a consumer detects an error by reviewing documentation from the financial institution, including the receipt of the transaction or the periodic statement. *Id.* § 1693h(a). The process starts when the consumer provides "oral or written" notice to his financial institution of the apparent error. *Id.* When that occurs:

> the financial institution *shall investigate* the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within *ten business days*.

*Id.* (emphasis added). If the financial institution determines that an error has in fact occurred:

> it *shall* promptly, but in no event more than *one business day* after such determination, *correct the error*, subject to section 1693g of this title, including the crediting of interest where applicable.

*Id.* § 1693h(b)(emphasis added). If the financial institution determines that no error has occurred, EFTA requires the financial institution to:

> deliver or mail to the consumer an explanation of its findings within *3 business days* after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

*Id.* § 1693f(d)(emphasis added).

The EFTA imposes strict time limits. The financial institution must respond to the consumer within 10 days of receiving the consumer's notice of the error. The financial

institution must correct any error within one day; and the financial institution must report negative results of its investigation within three days. *Id.* § 1693d(a), (b) & (d).[3]

A consumer can obtain judicial review if his or her financial institution does not comply with the error-resolution procedures. *See, e.g., Bisbey v. D.C. Nat'l Bank*, 793 F.2d 315 (D.C. Cir. 1986) (bank failed to follow § 1693f); *Gale v. Hyde Park Bank*, No. 02-C-3663, 2002 WL 31356405 (N.D. Ill. 2002) (concluding that bank properly followed § 1693f). Indeed, the consumer is entitled to ***treble damages*** from the financial institution if:

> "the financial institution did not make a good faith investigation of the alleged error," or
>
> the financial institution "did not have a reasonable basis for believing that the consumer's account was not in error," or
>
> "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation."

15 U.S.C. § 1693f(e).

### III.  PLAINTIFF'S ALLEGATIONS

The Complaint alleges the following facts, which E*TRADE assumes are true for the purposes of this Rule 12 Motion:

On July 5, 2002, Plaintiff used an ATM located in a Gooding's Supermarket in Lake Buena Vista, Florida bearing the mark "E*TRADE." Plaintiff alleges that

---

[3]  The financial institution can extend the deadline, but only to 45 days, and only if the financial institution gives the consumer a "provisional credit" for the error, "including interest where applicable," within the first 10 days. *Id.* § 1693d(c).

E*TRADE (along with Gooding's) is the "ATM operator" of that ATM. Plaintiff alleges that the display screen on the ATM notified him that he would be charged a $1.50 fee for the transaction, and he agreed to proceed with the transaction on that basis. When the transaction concluded, his receipt indicated that he had been charged a $2.00 transaction fee, 50 cents more than he authorized. Complaint ¶¶ 9-10, 14-17 & 37.

Based on this isolated incident, Plaintiff filed a putative nationwide class-action lawsuit. The Complaint does not allege -- even on information and belief -- that any ATMs anywhere else in the country charged unauthorized fees, or that any other unauthorized fees were charged at the Lake Buena Vista ATM. The Complaint simply asserts in conclusory fashion and without support that at least 15,000 persons were subjected to unauthorized fees. Complaint ¶ 21.

Plaintiff asserts a single cause of action under Section 1693m of the EFTA and requests actual damages, statutory damages, and attorney's fees and other costs. He also seeks an injunction to enjoin E*TRADE from charging unauthorized fees. Complaint, at 9.

The Complaint does not identify the bank that holds his account, that is, the "financial institution" under the EFTA. Nor does the Complaint allege that Plaintiff invoked the error-resolution procedures at his financial institution provided under the EFTA.

## ARGUMENT

**I.   PLAINTIFF SHOULD PURSUE AVAILABLE RELIEF UNDER THE EFTA'S ERROR-RESOLUTION PROCESS**

Plaintiff should not burden the courts with litigation over an allegedly unauthorized 50 cent withdrawal. Congress provided Plaintiff a simple method of obtaining

redress if he was injured, one which is a far more effective alternative to a federal class action lawsuit.

### A. Exhaustion Requires Resort To Non-Judicial Remedies Before Filing Federal Court Litigation

The Plaintiff should have exhausted his other remedies before running to court. His failure to do so requires dismissal of this action.

The well-entrenched doctrine of exhaustion is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). Under the doctrine, plaintiffs must purse available non-judicial remedies that Congress provided before they proceed with litigation in the federal courts. *Kobleur v. Group Hosp. & Med. Serv. Inc.*, 954 F.2d 705, 711 (11th Cir. 1992) ("The failure to exhaust an administrative remedy created by statute generally denies jurisdiction in the courts"). Even if Congress did not "explicitly mandate" exhaustion, *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), courts still require litigants to avail themselves of potential remedies when exhaustion "would further the policies underlying the doctrine." *Kobleur*, 954 F.2d at 711; *accord In re Inspection of Norfolk Dredging Co.*, 783 F.2d 1526, 1529 (11th Cir. 1986).

Exhaustion serves numerous purposes. One primary purpose "reflects a concern with judicial efficiency. 'A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene.'" *Tennessee Valley Auth. v. United States EPA*, 278 F.3d 1184, 1202 (11th Cir. 2002). *Accord Porter v. Schweiker*, 692 F.2d 740, 742 (11th Cir.

1982) (doctrine "conserves scarce judicial resources"). Another significant purpose of exhaustion is to allow the decision-maker in the non-judicial forum to "develop the necessary factual background upon which decisions should be based," and to "exercise its discretion or to apply its expertise." *McKart*, 395 U.S. at 194; *Kobleur*, 954 F.2d at 712; *Porter*, 692 F.2d at 742. The exhaustion doctrine also permits the decision-maker "to discover and correct its own errors." *Kobleur*, 954 F.2d at 712.

### B. The EFTA's Error-Resolution Process Serves The Goals Of Exhaustion

Plaintiff's lawsuit should be dismissed at this time because he never invoked the error resolution procedures Congress outlined in EFTA. Requiring Plaintiff to follow that process furthers all the laudable goals of the exhaustion doctrine.

Congress provided Plaintiff with a statutory remedial scheme that is far more simple and efficient than federal class action litigation. Plaintiff can contact his bank orally or in writing and explain that the transaction fee he was charged appears to be erroneous. The Plaintiff's bank — the "financial institution" for the purposes of the ATM transaction at issue — has clear and precise obligations toward Plaintiff. It must respond to Plaintiff within 10 days, and at that time either (1) agree that the transaction fee was in error and credit Plaintiff's account 50 cents; (2) disagree on the basis that the transaction fee was authorized, and provide the Plaintiff with a written description of the bank's analysis; or (3) provide Plaintiff a provisional credit of 50 cents, and thereby obtain an additional 35 days to issue a final response to Plaintiff.[4]

---

[4] The error-resolution procedure of EFTA applies to disputes about ATM transaction fees, such as the one Plaintiff raises here. Taking the Plaintiff's allegations to be true, the Plaintiff's
(continued)

This procedure provides numerous advantages that courts are hard-pressed to provide: Plaintiff's financial institution must investigate his complaint and respond within a matter or days. The Plaintiff's financial institution would apply its technical expertise with financial transactions, and with the ATM operations, in conducting its investigation of Plaintiff's complaint. During its investigation, the bank would develop the "necessary factual background" to the Plaintiff's allegations, thereby alleviating or even avoiding substantial discovery efforts if subsequent litigation arose. Finally, if the bank determined that an error occurred, the bank would promptly correct the error and provide Plaintiff complete relief. These kinds of informal, rapid and consumer-friendly results perfectly serve the purposes of the exhaustion doctrine.

### C.  Courts Routinely Apply The Exhaustion Doctrine To Statutes That Provide Dispute Resolution Procedures For Regulated Entities

Courts routinely apply the doctrine of exhaustion to various dispute resolution procedures that Congress provides for private parties, where at least one of the parties operates within strict guidelines set forth by federal law (such as unions and pension funds). The same doctrine should apply to disputes about electronic fund transfers by banking institutions.

One close analogy is the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, under which plan participants can bring claims about problems with their pension plans directly to plan trustees. Courts routinely require plaintiffs

---

bank's withdrawal of $2.00 from his account as the transaction fee would include an "unauthorized" or "incorrect" withdrawal of 50 cents, which therefore is an "error" within the meaning of EFTA's error-resolution procedures. *See* 15 U.S.C. §1693f(f)(1) & (2).

to exhaust this non-judicial remedy prior to filing any lawsuits. *See Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) ("It is well-established law in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court"); *accord Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-2 (11th Cir. 1985). The doctrine is not required by the express terms of the statute. "Instead, it is a court-imposed, policy-based requirement." *Watts v. BellSouth Telecomm., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). The exhaustion doctrine was applied to ERISA's dispute-resolution process because it "reduces the number of frivolous lawsuits under ERISA," "promotes the consistent treatment of claims for benefits," "provides a nonadversarial method of claims settlement," and "minimizes the costs of claims settlement for all concerned." *Mason*, 763 F.2d at 1227; *accord Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) (exhaustion doctrine under ERISA "furthers the goals of minimizing the number of frivolous lawsuits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for claim settlement").

Courts apply the exhaustion doctrine to other statutory remedial schemes for similar reasons. Under the Labor Management Reporting Disclosure Act, 29 U.S.C. § 411(a)(4), unions may adopt internal hearing procedures for union employees with grievances against the union. Applying the exhaustion doctrine to this remedial process, courts routinely require employees to exhaust these intra-union procedures before pursuing their claims in federal lawsuit — a rule that "establish[es] a uniform and exclusive method for orderly settlement of employee grievances." *Clayton v. International Union, United*

*Auto., Aerosp. & Agric. Impl. Workers of Am.*, 451 US 679, 686 (1981). Similarly, under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, airline union employees are required to pursue grievances with union-employer boards before filing federal lawsuits. *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1052 (11th Cir. 1996). As yet another example, "[t]he exhaustion requirement has also been applied to review of disciplinary actions by self-regulatory organizations such as national securities exchanges" under the Securities and Exchange Act. *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996).

These cases reflect the well-settled notion that federal courts are courts of limited jurisdiction, to be invoked only as a last resort after other means of dispute resolution are exhausted. The EFTA fits the paradigm perfectly.

### D. EFTA Imposes Liability on Plaintiff's Financial Institution, Not On E*TRADE, For The Error That Plaintiff Discovered

An independent reason exists why Plaintiff should use the error-resolution procedures with his financial institution, instead of this federal lawsuit against E*TRADE.

The Complaint alleges that the Plaintiff became aware of the allegedly unauthorized 50 cent overcharge when he reviewed his receipt of the ATM transaction. Complaint ¶ 17. The practical effect of Plaintiff's claim is that the financial institution withdrew an unauthorized amount of funds — 50 cents — from the Plaintiff's bank account, to cover an allegedly unauthorized transaction fee. The Plaintiff's actual dispute, then, is that he discovered through his receipt that the financial institution made an unauthorized withdrawal. Therefore, under EFTA the Plaintiff's actual cause of action lies against the financial institution, not against an ATM operator.

Under EFTA and the Federal Reserve Board's implementing regulations, the contents of the receipt that the consumer receives at the ATM is the responsibility of the consumer's financial institution, not the ATM operator. 15 U.S.C. § 1693d(a) (financial institution is responsible for "documentation of transfers" made at time of transfer); *accord* 12 C.F.R. § 205.9(a)(1). By contrast, the statute and regulation specifically governing ATM operators do not impose any responsibilities on the ATM operator concerning the contents of the receipt provided after the consumer concludes the transaction. 15 U.S.C. § 1693b(d); 12 C.F.R. § 205.16. This rule makes sense: an ATM receipt typically shows, for example, the balance of the consumer's account as a result of the transaction, information known only to the financial institution, not the ATM operator.

Because Plaintiff's claim essentially is that his receipt shows an unauthorized transfer of 50 cents from his account, the structure of the EFTA places any dispute about that matter between Plaintiff and his financial institution, not between Plaintiff and the ATM operator. This reason supports the conclusion that the Court should require Plaintiff to engage his financial institution in the error-resolution process in § 1693h, instead of filing a federal class-action lawsuit against E*TRADE.

## II. CONGRESS DID NOT PROVIDE EQUITABLE REMEDIES IN THE EFTA

The Complaint also seeks improper relief. Besides money damages, Plaintiff asks for an injunction "[e]njoin[ing] Defendants from continuing to charge a fee for the use of an ATM that is different from the fee disclosed by Defendants to be charged." Complaint at 9. The Court should dismiss this request for three separate reasons.

First, EFTA does not provide an injunctive remedy to Plaintiff. Section 1693m of EFTA provides as remedies actual damages, statutory damages, and attorneys' fees. 15 U.S.C. § 1693m(a). Where Congress prescribes specific remedies in a statutory scheme, other types of remedies that Congress omitted are not available. "[I]t is an elemental canon of statutory construction that where a state expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex Cty. Sewer Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981). Courts routinely reject demands for injunctive relief under statutes that do not include such relief in their remedial provisions. E.g., *Conboy v. AT&T Corp.*, 241 F.3d 242, 254-55 (2d Cir. 2001) (Communications Act); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1081 (9th Cir. 1986) (RICO); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 333-34 (M.D.N.C. 2002) (Real Estate Settlement Procedures Act).

Second, the Complaint fails to allege that Plaintiff is suffering or will suffer "irreparable harm," one of the fundamental elements for the exercise of equitable powers. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987). Plaintiff's alleged harm is purely economic and remediable by an award of damage. Therefore, his claim for an injunction must be dismissed. *Cf. Local Union 15, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Exelon Corp.*, 191 F. Supp. 2d 987 (N.D. Ill. 2001) (dismissing claim where plaintiff failed to sufficiently allege existence of irreparable injury); *Gersten v. Rundle*, 833 F. Supp. 906 (S.D. Fla. 1993) (same).

Finally, injunctive relief is not appropriate in this lawsuit because the Plaintiff seeks certification of a class action under Rule 23(b)(3). Complaint ¶ 25. However,

injunctive relief is *not* available under that provision of Rule 23. *McManus v. Fleet Enterprises, Inc.*, 320 F.3d 545 (5th Cir. 2003) (class certification under Rule 23(b)(3) inappropriate because plaintiff sought injunctive relief); *Wooden v. Board of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 n.23 (11th Cir. 2001) (Rule 23(b)(3) governs damage claims only).

## CONCLUSION

For these reasons, the Court should grant E*TRADE's Motion and dismiss the Complaint in its entirety. In the alternative, the Court should dismiss the request for injunctive relief.

Respectfully submitted,

_____

Robert M. Brochin
(Florida Bar No. 0319661)
MORGAN, LEWIS & BOCKIUS LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: 305.415.3000
Facsimile: 305.415.3001

Douglas P. Lobel (admitted *pro hac vice*)
Joseph F. Yenouskas (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1600 Tysons Boulevard, 12th Floor
McLean, VA 22102
Telephone: 703.918.1000
Facsimile: 703.918.1999

Counsel for Defendants E*TRADE Bank and E*TRADE Access, Inc.

Dated: April 9, 2003

1-NV/13547.1

15

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 9th day of April, 2003, served Defendants' Motion to Dismiss, the Brief in support thereof, and the Request for Oral Argument, by causing copies of the same to be sent via U.S. first-class mail, postage prepaid, to:

Counsel for Plaintiff:

Brian G. Pincket
MILAM & HOWARD, P.A.
50 N. Laura Street, Suite 2900
Jacksonville, Florida 32202

Counsel for Defendant Gooding's Supermarkets:

T. Todd Pittenger
LOWNDES, DROSDICK, DOSTER, KANTOR & REED, P.A.
215 North Eola Drive
Orlando, Florida 32802-2809

Joseph F. Yenouskas