REC'D

2003 MAY 29  AM 10: 17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GILBERT POLO, individually
and on behalf of all
others similarly situated,

       Plaintiff,                  Case No.: 6:03-CV-134-ORL-28 JGG

v.

GOODING'S SUPERMARKETS,
INC., a Florida corporation, E*TRADE
BANK, a federal savings bank, E*TRADE
ACCESS, INC.,

       Defendants.
_____/

FILED
Date 5/29/05     Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, GILBERT POLO ("Polo"), alleges in his Complaint filed in this action that Defendants, GOODING'S SUPERMARKETS, INC. ("Goodings"), E*TRADE BANK and E*TRADE ACCESS, INC. ("E*Trade")[1], violated the disclosure requirements of the Electronic Funds Transfer Act, Title 15 U.S.C. §§ 1693 et seq. (the "Act") and Regulation E, 12 CFR Part 205 et seq.,[2] because Defendants charged consumers a fee for the use of automated teller machines ("ATMs") operated by Defendants that was higher than the ATM fee actually disclosed by Defendants to those consumers. Goodings admits in its Corrected Answer and Affirmative Defenses that the illegal charge was made in a total of 5,099

---

[1] E*Trade Bank has filed a separate Motion to Dismiss on the basis that it does not operate ATMs. Plaintiff has agreed to dismiss the claims in this action against E*Trade Bank at this time without prejudice.

[2] Regulation E was promulgated by the Board of Governors of the Federal Reserve System to implement the

transactions over a four-month period from April 3, 2002 to August 5, 2002. Goodings has recently filed with this Court its Unopposed Motion to Amend Answer in which Goodings now admits that the illegal charge was made in a total of 7,127 transactions over the six month period from February 3, 2002 to August 5, 2002, and that the illegal charge was made in an additional unspecified number of transactions over the ten month period from April 3, 2001 to February 2, 2002.

In its Brief in Support of Defendants' Motion to Dismiss ("Defendants' Brief"), E*Trade asks this Court to ignore the explicit disclosure obligations Congress imposed upon ATM operators in EFTA to disclose the fees they charge for the use of ATMs by consumers.[3] Instead, Defendants argue that these separate and distinct disclosure obligations should be re-characterized as "unauthorized" electronic funds transfers ("EFT"), which according to Defendants, would require Polo, and each member of the proposed class, to use an error resolution process to ask each of their financial institutions to investigate the disclosure violations committed by Defendants. Defendants argue this even though it is clear that these financial institutions are not required to provide, and from a practical standpoint would never provide, the relief to which Polo and the proposed class members are entitled under EFTA.

Polo and the proposed class members are not required by EFTA to use an error resolution process to resolve their claims against Defendants for their violation of the ATM fee disclosure requirements set forth in EFTA. EFTA makes it clear that Congress intended for the error resolution process to be available only for certain specified violations of EFTA. Conspicuously absent from the list is an ATM operator's failure to comply with its fee

---

Act. The Act and Regulation E shall hereinafter be collectively referred to as "EFTA."

disclosure obligations.

Plaintiff brings this action on behalf of itself and others similarly situated to obtain the remedies granted to consumers by Congress for EFTA disclosure violations. EFTA provides that consumers are entitled to bring either an individual or class action to recover actual damages, statutory damages, and the reasonable attorneys' fees and costs in bringing an action to recover the specified damages for ATM fee disclosure violations.

### I. STATEMENT OF THE CASE

#### A. THE FACTS

On or about July 5, 2002, Polo used an ATM located in one of the supermarkets operated by Goodings. Polo alleges in his Complaint that Goodings and E*Trade are ATM operators under EFTA. Goodings admitted in its Corrected Answer that it is an operator of the ATM used by Polo and located in the Goodings Store. In addition, at the time Polo used the ATM there appeared on the ATM (1) the trademark "E*TRADE" and (2) a notice that read that E*Trade Access is an operator of the ATM used by Polo.

When Polo used the ATM located in the Goodings Store on July 5, 2002, a notice appeared on the screen of the ATM that notified Polo that he would be charged a fee of $1.50 by the operator of the ATM if he continued with the transaction (the "Transaction"). Polo touched the portion of the screen authorizing the payment of the $1.50 fee. After authorizing payment of the $1.50 transaction fee and after receiving the money withdrawn from the machine, Polo received a receipt for the Transaction. The receipt received by Polo for the

---

[3] Goodings has joined in E*Trade's Motion to Dismiss (hereinafter "Motion to Dismiss") pursuant to its Joinder in Defendant's Motion to Dismiss dated and served on Plaintiff on April 17, 2003.

Transaction indicated that Polo was charged a fee of $2.00 for the Transaction.[4]

### B. THE APPLICABLE LAW - THE ELECTRONIC FUNDS TRANSFER ACT AND REGULATION E

EFTA defines a "financial institution" as the bank or similar institution that holds a demand deposit, savings or other asset account of a consumer. 15 U.S.C. § 1693a (8). EFTA defines an "ATM operator" as any person who operates an automated teller machine at which consumers initiate electronic fund transfers <u>and is not the consumer's financial institution that holds the account</u> from which the transfer is made. 15 U.S.C. § 1693b (d) (3) (D) (i) (emphasis added). EFTA recognizes that the financial institution and the ATM operator have separate and distinct roles in the electronic funds transfer process, and therefore, EFTA imposes separate and distinct obligations on each of these parties.

EFTA provides for, among other things, the timing and substance of specified disclosures to be given by ATM operators to consumers. Title 15 U.S.C. § 1693b (d) (3) (A) requires an <u>ATM operator</u> who imposes a fee on a consumer for providing an electronic fund transfer (an "EFT") or balance inquiry to provide to the consumer (at the time the service is provided) notice of (i) the fact that a fee is imposed by such operator, and (ii) the amount of any such fee. (Emphasis added.)

Title 15 U.S.C. § 1693b (d) (3) (B) provides that the notice <u>required by the ATM operator</u> under §1693(d) (3) (A) with respect to any fee described therein shall appear on the

---

[4] Goodings admits in its Corrected Answer that it had knowledge of the disclosure violations on August 5, 2002 at the latest. Goodings does not say if it investigated at that time the period over which the disclosure violations occurred, but it can be concluded, in light of Goodings' recent Unopposed Motion to Amend Answer, that Goodings did not investigate the extent of its disclosure violations. If it is assumed that Goodings investigated the extent of the disclosure violations at the time it became aware of such violations, Polo is unaware of any effort on Goodings' part to provide a remedy to the victims until two months after the filing of this action.

screen of the ATM <u>after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction</u>. (Emphasis added.). Clearly, the notice obligation must be met before the transaction is completed and before the receipt required by the financial institution is provided.

Title 15 U.S.C. § 1693b (d) (3) (C) provides that no fee <u>may be imposed by an ATM operator</u> in connection with any electronic fund transfer initiated by a consumer for which a notice is required unless (i) the consumer receives such notice in accordance with the foregoing statutes and regulations, and (ii) the consumer elects to continue in the manner necessary to effect the transaction <u>after receiving such notice</u>. (Emphasis added).

Defendants are ATM operators who provided electronic fund transfer services at all relevant times to this action. As such, Defendants were required to provide notice to Polo and to all proposed class members in compliance with EFTA in connection with their use of the ATMs operated by Defendants. The obligations of Defendants to provide such notice is imposed by EFTA on the Defendants, not on consumers' financial institutions. Defendants failed to comply with such notice requirements, and therefore, were prohibited from imposing a fee in any amount.

## II. THE PLAIN MEANING OF EFTA

### A. The Premise of Defendants' Argument is Flawed; The ATM Fees Charged by Defendants Were Not "Unauthorized"

Defendants' Motion to Dismiss rests entirely on the premise that Plaintiff's claims are based upon Defendants' charging of "unauthorized" transaction fees. Motion to Dismiss at 1. The gravamen of the arguments in Defendants' Brief rests on this premise as well.

Defendants' Brief at 4, 7, and 12. Defendants' want to characterize the illegal transaction fees they charged as "unauthorized," because an "unauthorized" EFT is one of the "errors" listed in EFTA that would permit a consumer to instigate the error resolution process. 15 U.S.C. §1693f (f). Defendants' then argue that because the ATM fees they charged were "unauthorized," Polo and each member of the proposed class must utilize the EFTA error resolution process with each of their financial institutions. Motion to Dismiss at 1; Defendants' Brief at 4 and 7. If the fees charged by Defendants are not "unauthorized," as Defendants argue, then Defendants' argument must be rejected.

An "unauthorized" EFT is defined in EFTA as a transfer "from a consumer's account initiated by a person other than the consumer." 15 U.S.C. §1693a (11) (Emphasis added). Plaintiff has pled that the Transaction was initiated by him, and has never pled that the Transaction was "unauthorized." First Amended Class Action Complaint at 2-3. Defendants' argument that the Transaction is "unauthorized" and that Polo must use the error resolution process must fail for this simple reason.

Defendants' Motion to Dismiss is based upon the transaction being characterized as an "unauthorized" EFT. By definition, the Transaction is not an unauthorized EFT. Defendants' Motion to Dismiss should be denied.

While not raised in their Motion to Dismiss, Defendants have alluded in a footnote to a second basis for re-characterizing the ATM fee disclosure violations as errors. Motion to Dismiss at Footnote 4. In the event this Court believes that Defendant has properly raised the issue in its Motion to Dismiss, Plaintiff's arguments in this Brief should be read as addressing, in addition to the re-characterization of the disclosure violations as an

"unauthorized" EFT, the re-characterization of those violations as "incorrect" EFTs.

### B. ATM Operators Have an Obligation to Disclose the Fees They Charge

Notwithstanding the plain language of EFTA that imposes upon ATM operators the obligation to accurately disclose the fees they charge, Defendants argue that EFTA imposes absolutely no liability on Defendants for their failure to properly disclose the transaction fees that they charge. Defendants' Brief at 12-13. This argument is contrary to the plain meaning of EFTA.

EFTA defines an "ATM operator" as any person who operates an automated teller machine at which consumers initiate electronic fund transfers <u>and is not the consumer's financial institution that holds the account</u> from which the transfer is made. 15 U.S.C. § 1693b (d) (3) (D) (i) (emphasis added). EFTA provides for, among other things, the timing and substance of specified disclosures to be given by ATM operators to consumers. EFTA requires an ATM operator who imposes a fee on a consumer for providing an electronic fund transfer or balance inquiry to provide to the consumer (at the time the service is provided) notice of (i) the fact that a fee is imposed by such operator for providing the service, and (ii) the amount of any such fee. Title 15 U.S.C. § 1693b (d) (3) (A).

EFTA also provides that the notice required by the ATM operator under §1693(d) (3) (A) with respect to any fee described therein shall appear on the screen of the ATM after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction. Title 15 U.S.C. § 1693b (d) (3) (B). Clearly, the notice obligation must be met before the transaction is completed and before the receipt required by the financial institution is provided.

Defendants are ATM operators who provided electronic fund transfer services at all relevant times to this action. As such, Defendants were required to provide notice to Polo and to all proposed class members in compliance with EFTA in connection with the use by Polo and the proposed class members of the ATMs operated by Defendants. The obligations of Defendants to provide such notice are imposed by EFTA on the Defendants, not on consumers' financial institutions. Defendants failed to comply with such notice requirements, and therefore, were prohibited from imposing a fee in any amount.

This disclosure obligation imposed on ATM operators is logical for the reasons that the fees charged by ATM operators are: (1) for the use of the ATMs operated by ATM operators; (2) are determined by ATM operators; (3) are programmed into the ATMs by or on behalf of ATM operators; and (4) are collected and retained by ATM operators. None of the foregoing functions is performed by financial institutions. It would be illogical and impractical, and is simply impossible, for consumers' financial institutions to make the disclosures on those ATMs operated by ATM operators.

### III. THE ERROR RESOLUTION PROCESS IS INAPPLICABLE TO DISCLOSURE VIOLATIONS

#### A. Not all EFTA Violations are Subject to the Error Resolution Process

##### 1. A Disclosure Violation is Not an Error

Title 15 U.S.C §1693f contains a list of the violations of EFTA that constitute errors subject to the error resolution process of that section. Not every violation of EFTA is an error subject to the resolution process. Instead, Congress chose to identify and list only certain EFTA violations as subject to the error resolution process. If a specific violation is not listed in §1693f, then it is simply not subject to the error resolution process.

In this regard, it is clear that a plain reading of §1693f reveals that, notwithstanding the numerous disclosure requirements explicitly set forth throughout EFTA, Congress did not include in the list of "errors" any disclosure violations. Defendants' argument is essentially that this Court should overlook this fact and add to the list of errors every EFTA violation that could conceivably be re-characterized as an "unauthorized" or "incorrect" EFT. Defendants' argue that a disclosure violation should be re-characterized as an "unauthorized" or "incorrect" EFT, thereby enabling Defendants to discuss at length the exhaustion theory. Congress was fully aware of all of the possible EFTA violations, including disclosure violations, yet disclosure violations are conspicuously absent from the list. A disclosure violation is simply not an error subject to the error resolution process.

Even if this Court concludes that the Transaction with Polo, and the similar transactions of the proposed members of the class, can be characterized as unauthorized transfers, or some other error, this conclusion doesn't negate the fact that Defendants have also committed disclosure violations. Defendants have independent liability for their failure to comply with the very explicit disclosure requirements of EFTA, and the fact that the disclosure violation may have been the cause of an "unauthorized" or "incorrect" EFT doesn't prevent consumers from availing themselves of the remedies explicitly provided by Congress for Defendants' disclosure violations. Courts have routinely found liability solely based on a party's failure to meet its disclosure obligations to consumers under various federal laws. *Applebaum v. NMAC*, 226 F.3d 214 (3d Cir 2000); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Jordan v. Schaumberg Toyota*, 1999 WL 116224 (N.D. Ill. 1999). Congress could not have intended for ATM operators to avoid liability for

their disclosure violations simply because their actions in violating their disclosure obligations may also be characterized as an error, enabling a consumer to invoke the error resolution process if he desired.

Following Defendants' argument to its logical conclusion, Defendants' argument would effectively render the civil liability provisions of EFTA a nullity as applied to disclosure violations by ATM operators. The reality is that any disclosure violation will always result, according to the logic of Defendant, in an "unauthorized" or "incorrect" EFT. Defendants argument ignores the fact that EFTA imposes a separate obligation on them, as ATM operators, to disclose the fees they charge in accordance with EFTA before an EFT even occurs. The disclosure of the fee to be charged is required to be made at a point in time before an EFT has even occurred, so at the point in time when the Defendants made their wrongful disclosures, there could have been no "unauthorized" EFT necessary to trigger the error resolution process.

2. **EFTA's Remedial Provisions Distinguish Between Violations By Financial Institutions And Violations By All Others**

It is the purpose of EFTA to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund transfer systems. "The primary objective of [EFTA], however, is the provision of individual consumer rights." 15 U.S.C. §1693. These consumer rights are protected by EFTA by providing consumers with different remedies for violations of EFTA by the different participants in the EFT process.

Title 15 U.S.C. § 1693h, entitled "Liability of Financial Institutions," provides consumers with remedies for the violations specified therein by financial institutions. Title 15 U.S.C. § 1693m is a broader provision that provides consumers with remedies against

"any person" who fails to comply with "any provision" of EFTA. These separate liability provisions highlight the recognition by Congress that persons other than financial institutions have obligations under EFTA, and that a violation of the EFTA provisions applicable to non-financial institutions must be treated separately and differently than EFTA violations by financial institutions. In other words, an EFTA disclosure violation by a non-financial institution (e.g. an ATM operator) creates distinct liability for the violator, and EFTA's remedial provisions explicitly provide consumers with remedies directly against these non-financial institutions. Requiring consumers and their financial institutions to attempt to resolve a violation of EFTA by a non-financial institution is contrary to the remedial rights granted to consumers for violations of EFTA by non-financial institutions.

The nature of the violations and the resulting injury contemplated in §1693m is fundamentally different from that contemplated in §1693h. Section 1693h provides for the recovery of damages caused by a financial institution's failure to properly make an EFT. By comparison, §1693m provides for the recovery of damages caused by any person's non-compliance with a broad range of other provisions of EFTA, such as the improper issuance of cards and other access devices, the compulsory use of EFT systems, and the failure to disclose the fees charged by an ATM operator. These violations are fundamentally different from those addressed in §1693h. Section 1693h deals *with the failure to transfer*, which goes to the very heart of EFT systems. All of the violations contemplated by § 1693m, *such as the improper issuance of cards, the compulsory use of EFT systems, and disclosures*, may be properly viewed as collateral to the transfer process.

Congress intended ATM operators to have liability for their failure to comply with

the explicit ATM fee disclosure obligations applicable to them.

### B. The Failure to Disclose is not an Error

Defendants argue that the failure of an ATM operator to comply with the EFTA disclosure requirements constitutes an "error," and that therefore Polo must avail himself of the error resolution process prior to bringing this action. Specifically, the issue raised by the Motion to Dismiss is whether Defendants' disclosure of the fees to be charged for the use of Defendants' ATMs by consumers is an "error" in light of the fact that Defendants' actually charged consumers higher fees than those disclosed. The particular EFTA provision violated by Defendants is §1693b (d) (3). That section requires an ATM operator to disclose the fees it charges for use of its ATMs for any "electronic fund transfer," which "includes a transaction that involves a balance inquiry initiated by a consumer." Therefore, for purposes of complying with the ATM fee disclosure requirements, it is clear that a balance inquiry is an EFT.

It is also clear that a violation of the EFT fee disclosure requirements as they apply to a balance inquiry is not an error subject to the error resolution process. 12 CFR § 205.11(a) (2) (i). Therefore, in an EFT transaction in which one fee is disclosed and a different fee is actually charged, the disclosure violation and commensurate transfer of that fee (funds) from a consumer's account is not an error. In such a transaction, a consumer receives a receipt <u>after</u> the transaction fee disclosure violation of the ATM operator, the receipt reflects that the consumer was charged a transaction fee by the ATM operator that was greater than the fee disclosed by the ATM operator, and the consumer is in fact charged the higher fee, yet there has been no error. Consequently, even if the consumer wanted to go through the error

resolution process, he would not be able to do so. *Id.*

The balance inquiry transaction described above is identical to the Polo Transaction, with the exception that in the Transaction Polo's financial institution actually made a funds transfer <u>in accordance with Polo's instructions</u>, enabling him to take possession of the money requested to be withdrawn. If it were argued that an error occurred, the only possible error would be with regard to the ATM fee. Yet it is clear from the balance inquiry transaction, in which the only possible error was the transfer of the transaction fee itself, that such a transfer is not an error subjecting the transaction to the error resolution process.

Taking Defendants' argument to its logical conclusion, in both transactions there is a violation by an ATM operator of the exact same transaction fee disclosure requirement, § 1693b (d) (3), yet in one transaction the disclosure is clearly not an "error" (balance inquiry) and, according to Defendants, in the other transaction the disclosure is an "error." This result is illogical.

With regard to whether the error resolution process is applicable to a particular violation of EFTA, there is no logical distinction to be made between an ATM operator's failure to comply with its disclosure obligations when a consumer makes a balance inquiry, and those exact same disclosure obligations when a consumer withdraws money. In both transactions, the only "potential" error is as the result of the improper fee disclosure by the ATM operator, yet in the balance inquiry transaction, this can't be an error. Congress could not have intended that a consumer have the different remedies proposed by Defendants for the violation of the exact same EFTA provision by an ATM operator.

C. **<u>The Error Resolution Process Would be Futile</u>**

EFTA recognizes that the financial institution and the ATM operator have separate and distinct roles in the EFT process, and therefore, EFTA imposes separate and distinct obligations on each of these parties. E*Trade's entire brief is premised on the notion that a disclosure violation by an ATM operator is an error, and that such an error requires a consumer to go to its financial institution to resolve the disclosure violation. An analysis of the error resolution process as applied to the resolution of a disclosure violation reveals that the process can't work for the reasons set forth below.

1. **A Disclosure Violation Can't be "Resolved"**

A disclosure violation, by its very nature, cannot be "resolved." Once a party who has an obligation to disclose information to consumers prior to entering into a transaction with consumers fails to comply with the obligation, the obligation can't be fulfilled at a later date. ". . . [t]he consumer suffers the harm of a disclosure violation when she relies on the improper disclosure and enters the lease. . . ." *Jordan* at 4. The very basis of a disclosure requirement is that it be given at a certain point in time to apprise a consumer of his rights, obligations, or in this case, the fees charged by an ATM operator for using one of its ATMs. Specifically, the EFTA disclosure provision violated in this case requires an ATM operator who imposes a fee on a consumer for the use of its ATM to disclose the fee "after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction." §1693b (d) (3) (B) (ii). Once the consumer is "irrevocably committed to the transaction," neither the ATM operator nor the consumer's financial institution can go back in time to provide the requisite notice of the fee to be charged. The proverbial bell cannot be "unrung."

## 2. The Error Resolution Procedures Do Not Require a Financial Institution to Investigate Beyond a Review of its Own Records

Defendants argue that the error resolution process applies to the disclosure violation by an ATM operator, and that therefore Polo should have notified the financial institution that holds his account of the disclosure violation so that it could investigate the violation. This argument fails to recognize that Polo's financial institution has no obligation under EFTA to investigate Polo's complaint beyond a review of its own internal records. 12 CFR §205.11(c) (4). Such a limited review could not determine the nature or extent of any alleged "error" that occurred in this case. Section 205.11(c) (4) of Regulation E reads as follows:

> (4) Investigation. With the exception of transfers covered by §205.14 [(inapplicable to these facts)], a financial institution's review of its own records regarding an alleged error satisfies the [investigatory] requirements of this section if: (i) The alleged error concerns a transfer to or from a third party; and (ii) There is no agreement between the institution and the third party for the type of electronic fund transfer involved.

In this case, the Transaction involved an EFT to a third party. Under §205.11, a third party would be a party other than Polo or his financial institution. In the Transaction, the fee Polo paid to the ATM operator was a "transfer to or from a third party" within the meaning of §205.11(c) (4). The issue then becomes whether there existed an agreement between Polo's financial institution and the Defendant ATM operators at the time of the Transaction. Defendants have not alleged in Defendants' Brief that such an agreement exists, and have not attached such an agreement to their Brief. This issue creates, at a minimum, a factual issue as to whether or not §205.11 is applicable.

Assuming §205.11 applies, the extent of a financial institution's obligations to investigate the disclosure violation of the Defendant ATM operators would be to "review its

own records regarding the alleged error." Polo's financial institution does not have the information as to the amount of the transaction fee disclosed by Defendants, but only has the information on the total amount of the funds actually withdrawn, inclusive of the fee actually charged. A review of its own records by Polo's financial institution would not be able to conclude, one way or the other, whether the Transaction was an "error." Requiring Polo to seek resolution of the disclosure violation from his financial institution would be futile.

In addition, requiring a victim of a disclosure violation to seek relief from his financial institution is futile from a practical standpoint, and for his reason could not have been what Congress intended. The financial institution of a consumer that does not operate the ATM at which the disclosure violation occurred, as in the present case, (1) doesn't determine the fee to be charged by the ATM operator, (2) has no involvement in the faulty programming of the ATM that failed to comply with the disclosure violation, (3) doesn't collect or profit from the improperly disclosed fee, and (4) would have no information within its own records to determine whether or not such a disclosure violation occurred. All of this information is within the control of the ATM operators (or the network to which they are connected), not the financial institutions that are simply connected to the vast network of ATMs operated by hundreds of thousands of ATM operators across the country.

### 3. The Error Resolution Process Doesn't Provide the Remedies Authorized by Congress for Disclosure Violations

Section 1693m reads that "any person" who fails to comply with "any provision" of EFTA "is liable to such consumer in an amount equal to the sum of" (1) any actual damage sustained by such consumer, (2) statutory damages for both an individual action and a class action, and (3) in the case of a successful action, reasonable attorney's fees

and costs. Even assuming the error resolution process applied, financial institutions are not required to provide the relief to which Polo and the proposed class members are entitled under §1693m.

In the absence of any violation other than a failure to comply with disclosure requirements, and even when there are no actual damages as a result of the disclosure violation, courts have overwhelmingly confirmed the plain meaning of disclosure statutes and have held violators to be liable for statutory damages. *Applebaum; Highsmith; Jordan.*

Requiring Polo and the proposed class members to go through the error resolution process for a disclosure violation by an ATM operator would deprive Polo and the class members of their statutory rights under EFTA to seek statutory damages, relief on a class-wide basis, and reasonable attorney's fees and costs.

## IV. THE EXHAUSTION DOCTRINE IS INAPPLICABLE

### A. The Error Resolution Process is Not Mandatory

If this Court finds that the ATM fee disclosure violation of Defendants is an "error" under EFTA, this Court must then determine whether Polo, and each of the other proposed class members, is required to pursue the error resolution process set forth in EFTA. There is no provision of EFTA that requires Polo to pursue that process, and Defendants have failed to cite one in their Brief. In fact, a plain reading of EFTA reveals that a financial institution's obligations to follow the error resolution process is only triggered "if" the financial institution receives notice from its account holder of an alleged error. 15 U.S.C. §1693f(a).

It is interesting to note that during the debate on the adoption of EFTA, most financial institutions took the position that the enactment of any formal error correction procedure was

unnecessary.[5] However, keeping in mind the primary purpose of EFTA, the protection of consumers' rights, consumer advocates prevailed and the error resolution process was included. Based on this history, it is unlikely that Congress would have intended an interpretation of EFTA that would preclude the exercise of the rights and remedies granted to consumers in EFTA; those being the remedies of statutory damages, class action relief and attorneys' fees and cost incurred in enforcing those rights.

### B. Policies Underlying the Exhaustion Doctrine

Defendants argue that Polo, and each of the other 7,127 members of the proposed class, must notify their financial institutions of the disclosure violations committed by Defendants so that those financial institutions can investigate the alleged "error" and provide the remedies available to the class. Defendants' Brief at 8. One policy cited by Defendants is that of judicial efficiency, which can be further if "[a]complaining party . . . [is] successful in vindicating his rights in the administrative process." *Tennessee Valley Auth. v. United States EPA*, 278 F.3d 1184, 1203 (11th Cir. 2002). This policy cannot be fulfilled in the present case for the reasons cited in Sections III of this Brief.

EFTA provides that an ATM operator is not entitled to collect <u>any</u> fee for a transaction in which the operator failed to properly disclose the fee. 15 U.S.C. 1693b. EFTA also provides for statutory damages in addition to actual damages. Financial institutions are not required by EFTA to provide such damages to a consumer in the error resolution process. 15 U.S.C. §1693f. Courts have held that the exhaustion doctrine is not applicable when the remedies sought are not provided for by the resolution process, and that in such

---

[5] Hearings on S. 2065 before the Subcomm. On Consumer Affairs of the Senate Comm. On Banking, Housing

circumstances the process is inadequate, and any attempt at exhaustion would be futile. *Porter v. Schweiker*, 692 F.2d 741 (11th Cir. 1982). The policy of judicial efficiency can't be met in this case.

The remaining policies frequently cited by the courts as underlying the exhaustion doctrine are cited in cases involving proceedings before federal administrative agencies, where the policies can be fulfilled. *Kobleur v. Group Hosp. and Med. Serv., Inc.*, 954 F.2d 705 (11th Cir. 1992) (Office of Personnel Mgt.); In re *Inspection of Norfolk Dredging Co.*, 783 F.2d 1526 (11th Cir. 1986) (OSHA). These additional policies are generally cited as: protecting administrative autonomy, deferring to agency expertise, avoiding the premature interruption of the administrative process, and letting the agency develop the factual background upon which decisions should be based. *Inspection* at 1529; *Kobleur* at 712. These policies would simply not be furthered through the error resolution process set out in EFTA. 15 U.S.C. §1693f.

## V. EXCEPTIONS TO THE EXHAUSTION DOCTRINE

Even assuming the exhaustion doctrine is applicable, the courts have held that there are exceptions to the enforcement of the doctrine. *Kobleur* at 712. "Courts will not require exhaustion when the administrative remedy is inadequate because it does not exist, or would not provide relief commensurate with the claim, or would unreasonably delay the action and thereby create a serious risk of irreparable injury." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1556 (11th Cir. 1985). As discussed in Sections III.C. and IV. B. of this Brief above, the remedies available from financial institutions pursuant to the error resolution

---

and Urban Affairs, 95th Cong., 1st Sess. 39 (Oct. 3-5, 1977) (See statement of Eugene M. Tangney).

process are inadequate.

## CONCLUSION

For these the reasons, this Court should deny Defendants' Motion to Dismiss.

Respectfully Submitted,

Brian G. Pincket
Florida Bar No.: 501425
MILAM & HOWARD, P.A.
50 N. Laura Street, Suite 2900
Jacksonville, Florida 32202
Telephone: (904) 357-3660
Facsimile: (904) 357-3661

Lance A. Raphael, Esquire
Stacy Bardo, Esquire
The Consumer Advocacy Center
25 East Washington, Suite 1805
Chicago, IL 60602
Telephone: (312) 782-5808
Facsimile: (312) 377-9930

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished by United States Mail this 19th day of May, 2003 to:

Todd Pittenger
Lowndes, Drosdick, Doster, Kantor & Reed
215 North Eola Drive
Orlando, Florida 32801
Attorneys for Defendant
Gooding's Supermarkets, Inc.

Joseph Yenouskas, Esq.
Morgan, Lewis & Bockius
1600 Tysons Blvd., Suite 1200
McLean, Virginia 22102
Attorneys for Defendants
E*Trade Bank and
E*Trade Access, Inc.

ATTORNEY