UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

03 OCT -9 AM 11: 53

CLERK
MIDDLE D
ORLANDO, FLORIDA

GILBERT POLO, individually
and on behalf of all
others similarly situated,

            Plaintiff,                Case No.: 6:03-CV-134-ORL-28 JGG

v.

GOODING'S SUPERMARKETS,
INC., a Florida corporation, E*TRADE
BANK, a federal savings bank, E*TRADE
ACCESS, INC.,

            Defendants.

_____/

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDA
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

In his Complaint POLO alleges that GOODING'S SUPERMARKETS, INC.

("Goodings") and E*TRADE ACCESS, INC. ("E*Trade")[1], violated the disclosure

requirements of the Electronic Fund Transfer Act,[2] because Defendants charged consumers a

fee for the use of an ATM that was different from the fee they disclosed. Goodings admits

that it is an operator of the ATM used by Plaintiff, that it charged a total of 7,127 consumers

a higher fee than disclosed over the six month period from February 3, 2002 to August 5,

2002, and that it charged an additional unspecified number of consumers a higher fee than

---

[1] Plaintiff has dismissed his claims in this action against E*Trade Bank without prejudice.

[2] Title 15 U.S.C. §§ 1693 et seq. (the "Act") and Regulation E, 12 CFR Part 205 et seq. Regulation E was promulgated by the Board of Governors of the Federal Reserve System to implement the Act. The Act and Regulation E shall hereinafter be collectively referred to as "EFTA."



disclosed over the ten-month period from April 3, 2001 to February 2, 2002. Goodings First Amended Answer at 6.

Plaintiff filed his Motion for Class Certification and Memorandum in Support thereof on June 7, 2003. Defendant E*Trade served its Opposition to Plaintiff's Motion for Class Certification on August 8, 2003.[3] Defendant Goodings served its Opposition to Plaintiff's Motion for Class Certification on August 11, 2003.[4] Notwithstanding the fact that Goodings has admitted that more than 7,127 consumers were charged a fee that was different than the disclosed fee for the use of an ATM of which Goodings also admits it was the operator, Defendants argue that this action is not one that this Court should certify as a class action. Plaintiff's reply to Defendants' arguments is set forth below.

## I.    THIS ACTION SHOULD BE CERTIFIED AS A NATIONWIDE CLASS ACTION

Defendants argue that Plaintiff has not offered evidence or alleged that any ATM, other than the Goodings ATM used by Plaintiff, had a defective notice under EFTA. E*Trade's Brief at 18. It is not necessary for Plaintiff to respond to Defendants' argument in light of the fact that Plaintiff has recently located a second ATM machine operated by E*Trade that also fails to accurately disclose the transaction fee charged in violation of EFTA.[5] *See* Certification Pursuant to 28 U.S.C. § 1746 of Lauren Miller attached hereto as Exhibit "A". The Goodings and E*Trade ATM used by Plaintiff was located in Orlando, Florida. The E*Trade ATM used by Lauren Miller was located in Skokie, Illinois. This

---

[3] Hereinafter cited as "E*Trade's Brief."

[4] Hereinafter cited as the "Goodings Brief." Goodings has also joined in E*Trade's Brief. Goodings Brief at 1.

[5] This second ATM was discovered subsequent to the filing of Plaintiff's Motion for Class Certification.

action should be certified as a nationwide class action.

## II. ALTHOUGH THE CLASS DEFINITION WAS PROPER, PLAINTIFF WILL MODIFY THE WORDING TO ADDRESS DEFENDANTS' DEBATE OVER WORD CHOICE

Plaintiff's one-count Complaint[6] clearly describes a violation of one specific disclosure provision of EFTA. The facts pled supporting the single count are necessarily brief.[7] Based on the facts pled, Plaintiff defined the class in the Complaint as those "persons who, 1) during the applicable statute of limitations, 2) were charged a "transaction fee" for the use of an ATM, 3) in an amount different from the "transaction fee" disclosed on the terminal screen of the ATM."[8]

The class definition in the Complaint and the definition contained in Plaintiff's Motion for Class Certification ("Motion") are substantively identical. However, rather than launch into a debate about word choice, as a class definition can be modified at any time prior to a final judgment, and certainly prior to certification,[9] Plaintiff withdraws any prior

---

[6] The operative Complaint filed in this action is styled as the First Amended Class Action Complaint and Demand for Jury Trial.

[7] See paragraphs 8 through 18 of the Complaint.

[8] Paragraph 20 of the Complaint.

[9] *Irwin v. Mascott*, 2001 U.S. Dist. LEXIS 3285, *10-11 (N.D. Cal. Feb. 27, 2001) ("As provided by Rule 23(c) (1), the court may modify the class certification at any time before a decision on the merits. The question raised by Defendants is whether the court's power to modify the class definition ceases upon summary judgment, or whether the court retains authority to modify the class definition up to the entry of final judgment. Rule 23, Federal Rules of Civil Procedure, and case law both indicate that the court may modify the class definition at any time before the final judgment, if the moving party shows sufficient evidence that the class as defined is unworkable."); F.R.Civ.P. 23(c) (1) ("An order under this subdivision may be conditional; and may be altered or amended before the decision on the merits."); *Ditty v CheckRite, Ltd.*, 182 F.R.D. 639, 645 (D.Utah 1998), citing *Buycks-Roberson v Citibank Federal Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D.Ill. 1995) ("Since the class certification decision is usually made early in the case, it may become necessary to modify the class definition after further discovery or other events which alter the parameters of the class. A district court has discretion to modify the certification; thus, all class certifications are essentially temporary until a final judgment is entered. Fed.R.Civ.P. 23(c)(1)"); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), *cert.*

3

wording for his class definition and substitutes in a definition that satisfies the Defendants' concerns over word choice.

As a result, the class definition for the class that Plaintiff seeks to certify is as follows:

> **All consumers who, within the time period beginning one year prior to the filing of this action and ending on the date of certification of this action, were provided host transfer services from an automated teller machine operated by any Defendant, and who were charged a "transaction fee" that was different from one or more of the transaction fee notices that appeared on the outside of the machine or on the screen of the machine.[10]**

## III. INDIVIDUAL ISSUES DO NOT PREDOMINATE

### A. Under EFTA No Fee May Be Imposed by Defendants

Defendants devote a significant amount of their Memoranda arguing that a determination will need to be made as to whether each class member relied upon Defendants' misdisclosure. Defendants' argument is that each class member must prove that it relied on Defendants' misdisclosure and that a class action is not appropriate for the recovery of "actual damages." In support of this argument, Defendants cite Truth-in-Lending Act ("TILA") language similar to EFTA, and cases interpreting the TILA language, for the proposition that a consumer may not recover "actual damages" from a person who fails to comply with the EFTA unless "actual damages" are sustained "as a result of such failure."

Defendants are wrong on two fronts. First, this is not a basis for denial of class

---

denied, 479 U.S. 883, 107 S. Ct. 274, 93 L. Ed. 2d 250 (1986); Lawler v. Alexander, 698 F.2d 439 (11th Cir. 1983); Sandles v. Ruben, 89 F.R.D. 635 (S.D. Fla. 1981); Ostler v. Level 3 Communications, Inc., 2002 WL 31040337 (S.D. Ind. 2002); and Harris v. Pan American World Airways, Inc., 74 F.R.D. 24 (N.D. Ca. 1977).

[10] In the event this Court is unwilling to clarify the definition of the class without a motion to do so, Plaintiff hereby moves this Court for an Order clarifying and redefining the class as set forth above.

certification, even in the context of TILA. Even if individual proof of damages is required in a TILA case, common issues still predominate.[11]

Moreover, Defendants essentially concede that statutory damages are recoverable under other EFTA provisions, namely Title 15 U.S.C. § 1693m (a) (2) (statutory damages) and Title 15 U.S.C. § 1693m (a) (3) (costs of the action and attorneys' fees), even if actual damages are not recoverable.

However, what is glaringly omitted from Defendant's argument is that, <u>unlike TILA</u>, under EFTA an operator is prohibited from imposing <u>any</u> transaction fee if the disclosure provisions are not followed exactly. Title 15 U.S.C. § 1693b (d) (3) (C) provides that "<u>no fee may be imposed by an automated teller machine operator in connection with any</u>" ATM transaction if the operator does not comply with the fee disclosure requirements of EFTA. This EFTA provision contains <u>no reliance language</u>. Further, there is no language in TILA that is comparable to this EFTA language that absolutely prohibits an ATM operator from charging a fee if it fails to provide the EFTA required disclosures. Therefore, in order to give meaning to this EFTA language, EFTA requires prohibiting the charging of fees when an ATM operator fails to comply with the disclosure requirements.

**B.**   <u>**Damages under Title 15 U.S.C. §§ 1693m (a) (2) and (3)
Are not "Actual Damages"**</u>

Assuming arguendo that this Court believes that actual damages would not be awardable to the class members without individual inquiries made into the actual damages

---

[11] *See Chandler v. Southwest Jeep-Eagle, Inc.* 162 F.R.D. 302 (N.D. Ill. 1995) (Even if individual proof of damages is required in a TILA class action, common issues still predominate.); *Hoffman v. Grossinger Motor Corp.*, 1999 WL 184179, 1999 U.S. District Lexis 4172 *16 (N.D. Ill 1999) (certifying a TILA actual damages class on liability issues only); *and Johnson v. Aronson Furniture Co.*, 1998 WL 641342 (N.D. Ill. 1998) (certifying a TILA actual damages class on liability issues only).

suffered by each class member, this Court should still certify this action as a class action enabling the class members to recover the statutory damages provided for in EFTA. *Adiel v. Chase Federal Sav. and Loan Ass'n.*, 810 F.2d 1051 (11th Cir. 1987) (This Court affirmed an award of statutory damages on a TILA claim after noting that the lower court did not award actual damages (too difficult to prove in that case) and that the lower court, when determining the amount of statutory damages to award, considered the fact that actual damages were not awarded.). *Adiel* at 1054 - 1055. *See also, Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) (Statutory damages are available without proof of actual damages under the Fair Debt Collection Practices Act.); *and Barber v. Kimbrell's, Inc.*, 424 F.Supp. 42 (W.D. N.C. 1976) (Statutory damages awarded for TILA violation even though no actual damages were proved.), *aff'd in relevant part, rev'd in part*, 577 F.2d 216 (4th Cir. 1978), *cert. den.*, 439 U.S. 934 (1978).

Defendants do not argue that there is a reliance requirement for Plaintiff and the proposed class to recover statutory damages under EFTA. The language cited by Defendants is limited to Section 1693m (a) (1), and simply does not apply under any circumstances to other damages authorized by EFTA. Title 15 U.S.C. §§ 1693m (a) (2) and (3). Nor does Defendant argue that any individual factual inquiries need to be made in order to determine these damages. Consumers who bring an action to recover statutory damages and the fees and costs incurred in bringing such an action do not have to prove that statutory damages were suffered "as a result of" the Defendants failure to properly disclose the transaction fees.

**C.     Different Actual Damages Suffered by Class Members is not a bar to Certification**

Defendants argue that because there is the possibility that class members may have suffered different injuries, the proposed class may not be certified.  E*Trade's Brief at 13.  In addressing the potential difficulty in determining the amount of damages that may have been suffered by individual class members, the court in *Roper v. Consurve, Inc.*[12] wrote:

> This is a classic case for a Rule 23(b) (3) class action.  The claims of a large number of individuals can be adjudicated at one time, with less expense than would be incurred in any other form of litigation.    The claims are relatively small, said even by the plaintiffs to average less than $100 each, and the question of law is one that applies alike to all.  While it may be necessary to make individual fact determinations with respect to charges, if that question is reached, these will depend on objective criteria that can be organized by computer, perhaps with some clerical assistance. It will not be necessary to hear evidence on each claim.

*Roper* at 12.

In the event this Court finds that the cost of determining the precise amount of actual damages to be exorbitantly high, there are alternative ways of providing the class members with some form of actual damages.  The court in *Barr v. WUI/TAS, Inc.*[13] analyzed the propriety of a settlement fund that was calculated based on the estimated damages that the defendant had overcharged a class of plaintiffs.  The court found that where there was no method for determining the precise amount that any particular plaintiff was overcharged, that it was permissible to distribute the settlement fund equally among the plaintiffs.  The *Barr* court wrote: "Thus, by an equal distribution, we are assured that each injured member will

---

[12] 578 F.2d 1106 (5th Cir. 1978), *aff'd, Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1421 (1979).

[13] 1976 WL 1205 (S.D. N.Y. 1976).

recover something." *Barr* at 1207.

The question of the individual damages suffered by a particular class member can also be addressed through an appropriately drafted claim form that would require a class member to provide information sufficient to determine the exact damages suffered by that member. *Bruno v. Superior Court,* 127 Cal. App.3d 120 (4th Dist. 1981) (Class members "rights can be protected by notice and claim procedures that give class members an adequate opportunity to obtain their individual shares.") *Bruno* at 130.   This is a very common method of determining damages for individual members in class actions.

Finally, if this Court concludes that the determination of actual damages suffered by each class member is incapable of being addressed for any reason, this Court should still certify this action as a class action and provide the statutory damages authorized by EFTA to the class members.   The determination of statutory damages in no way requires individual inquires into each class member's transaction.

## IV.    THE ERROR RESOLUTION PROCESS IS INAPPLICABLE TO DISCLOSURE VIOLATIONS

Defendants incorrectly continue to argue that an error resolution process set forth in EFTA is a superior alternative to the class action for the fair and efficient adjudication of the proposed class members' claims.[14]  These same arguments were advanced by Defendants in their Motion to Dismiss this action, which Motion was denied by this Court.  The reasons why the error resolution process set forth in EFTA is either inapplicable to Plaintiff and the class members or is insufficient to provide relief to the proposed class members are set forth

---

[14] E*Trade's Brief at 14.

in detail in Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss filed with this Court on May 20, 2003. These arguments are summarized below.

**A.**    **Not all EFTA Violations are subject to the Error Resolution Process**

      **1.**    **A Disclosure Violation is not an "Error" Subject to the Resolution Process**

Title 15 U.S.C §1693f contains a list of the violations of EFTA that constitute errors subject to the error resolution process of that section. Not every violation of EFTA is an error subject to the resolution process. Instead, Congress chose to identify and list only certain EFTA violations as subject to the error resolution process. If a specific violation is not listed in §1693f, then it is simply not subject to the error resolution process. In this regard, it is clear that a plain reading of §1693f reveals that, notwithstanding the numerous disclosure requirements explicitly set forth throughout EFTA, Congress did not include in the list of "errors" any disclosure violations. A disclosure violation is simply not an error subject to the error resolution process.

In addition, courts have routinely found liability solely based on a party's failure to meet its disclosure obligations to consumers under various federal laws. *Applebaum v. NMAC*, 226 F.3d 214 (3rd Cir. 2000), *cert. den.*, 533 U.S. 929, 121 S.Ct. 2549 (2001); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *and Jordan v. Shaumberg Toyota*, 1999 WL 116224 (N.D. Ill. 1999), *aff'd* 236 F.3d 866 (7th Cir. 2001).

      **2.**    **EFTA's Remedial Provisions Distinguish Between Violations by Financial Institutions and Violations by All Others**

Title 15 U.S.C. § 1693h, entitled "Liability of Financial Institutions," provides consumers with remedies for the violations specified therein by financial institutions. Title

15 U.S.C. § 1693m is a broader provision that provides consumers with remedies against "any person" who fails to comply with "any provision" of EFTA. These separate liability provisions highlight the recognition by Congress that persons other than financial institutions have obligations under EFTA, and that a violation of the EFTA provisions applicable to non-financial institutions must be treated separately and differently than EFTA violations by financial institutions. In other words, an EFTA disclosure violation by a non-financial institution (e.g. an ATM operator) creates distinct liability for the violator, and EFTA's remedial provisions explicitly provide consumers with remedies directly against these non-financial institutions.

### B.    The Failure to Disclose is not an Error

The particular EFTA provision violated by Defendants is §1693b (d) (3).  That section requires an ATM operator to disclose the fees it charges for use of its ATMs for any "electronic fund transfer," which "includes a transaction that involves a balance inquiry initiated by a consumer."  Therefore, for purposes of complying with the ATM fee disclosure requirements, it is clear that a balance inquiry is an electronic fund transfer ("EFT").

It is also clear that a violation of the EFTA fee disclosure requirements as they apply to a balance inquiry is not an error subject to the error resolution process.  12 CFR § 205.11(a) (2) (i).  Therefore, in an EFT transaction in which one fee is disclosed and a different fee is actually charged, the disclosure violation and commensurate transfer of that fee (funds) from a consumer's account is not an error, and is not subject to the error resolution process.  Consequently, even if the consumer wanted to go through the error resolution process, he would not be able to do so. *Id.*

The balance inquiry transaction described above is identical to the Plaintiff's transaction, with the exception that in the Plaintiff's transaction his financial institution actually made a funds transfer <u>in accordance with his instructions</u>, enabling him to take possession of the money requested to be withdrawn. If it were argued that an error occurred, the only possible error would be with regard to the ATM fee. Yet it is clear from the balance inquiry transaction, in which the only possible error was the transfer of the transaction fee itself, that such a transfer is not an error subjecting the transaction to the error resolution process.

## C.    The Error Resolution Process Would be Futile

An analysis of the error resolution process as applied to the resolution of a disclosure violation reveals that the process can't work for the reasons set forth below.

### 1.    A Disclosure Violation can't be "Resolved"

A disclosure violation, by its very nature, cannot be "resolved." Once a party who has an obligation to disclose information to consumers prior to entering into a transaction with consumers fails to comply with the obligation, the obligation can't be fulfilled at a later date. ". . . [t]he consumer suffers the harm of a disclosure violation when she relies on the improper disclosure and enters the lease. . . ." *Jordan* at *4. The EFTA disclosure provision violated in this case requires an ATM operator who imposes a fee on a consumer for the use of its ATM to disclose the fee "after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction." §1693b (d) (3) (B) (ii). Once the consumer is "irrevocably committed to the transaction," neither the ATM operator nor the consumer's financial institution can go back in time to provide the requisite notice of the fee

to be charged.  The proverbial bell cannot be "unrung."

### 2.    The Error Resolution Procedures Do Not Require a Financial Institution to Investigate Beyond a Review of its Own Records

Financial institutions have no obligation under EFTA to investigate a consumer's complaint beyond a review of its own internal records.  12 CFR §205.11(c) (4).  Such a limited review could not determine the nature or extent of any alleged "error" that occurred in this case.  Section 205.11(c) (4) of Regulation E reads as follows:

> (4)  Investigation.  With the exception of transfers covered by §205.14 [(inapplicable to these facts)], a financial institution's review of its own records regarding an alleged error satisfies the [investigatory] requirements of this section if:   (i) The alleged error concerns a transfer to or from a third party; and (ii) There is no agreement between the institution and the third party for the type of electronic fund transfer involved.

In Plaintiff's transaction, the fee he paid to the ATM operators was a "transfer to or from a third party" within the meaning of §205.11(c) (4).  Plaintiff is not aware of the existence of an agreement between his financial institution and the Defendant ATM operators at the time of the Plaintiff's transaction, and Defendants did not allege the existence of such an agreement in any document filed in this action.

Assuming §205.11 applies, the extent of a financial institution's obligations to investigate the disclosure violation of the Defendant ATM operators would be to "review its own records regarding the alleged error."  Plaintiff's financial institution does not have the information as to the amount of the transaction fee disclosed by Defendants, but only has the information on the total amount of the funds actually withdrawn, inclusive of the fee actually charged.

3.     **The Error Resolution Process Doesn't Provide the Remedies Authorized by Congress for Disclosure Violations**

Section 1693m reads that "any person" who fails to comply with "any provision" of EFTA "is liable to such consumer in an amount equal to the sum of" (1) any actual damage sustained by such consumer, (2) statutory damages for both an individual action and a class action, and (3) in the case of a successful action, reasonable attorney's fees and costs. Even assuming the error resolution process applied, financial institutions are not required to provide the relief to which Plaintiff and the proposed class members are entitled under §1693m. In the absence of any violation other than a failure to comply with disclosure requirements, and even when there are no actual damages as a result of the disclosure violation, courts have overwhelmingly confirmed the plain meaning of disclosure statutes and have held violators to be liable for statutory damages. *Applebaum; Highsmith and Jordan.*

Requiring Plaintiff and the proposed class members to go through the error resolution process for a disclosure violation by an ATM operator would deprive Plaintiff and the class members of their statutory rights under EFTA to seek statutory damages, relief on a class-wide basis, and reasonable attorney's fees and costs.

V.     **THE PROPOSED CLASS IS MANAGEABLE**

Defendants argue that the time and expense involved in identifying class members makes this action unmanageable as a class action. E*Trade's Brief at 17. The court in *Perry v. Beneficial Fin. Co. of N.Y., Inc.*[15], a case in which the plaintiff pled a class action for

---

[15] 81 F.R.D. 490 (W.D. N.Y. 1979).

13

violations of the TILA, was faced with this very argument. In responding to this argument the *Perry* court wrote:

> Finally, defendant argues that the identities of a substantial number of the class members, perhaps as great as seventy-five percent, are not readily available from defendant's computer records, and therefore a class action would be unmanageable. While the existence of class members who are not readily identifiable present management problems, such problems are not insurmountable. <u>This court may tailor the form of notification to the class under rule 23(c) (2) to accommodate such class members and may fashion an appropriate class recovery if plaintiff prevails on the merits.</u> Thus, I find that a class action is superior to other available means of adjudication the instant controversy and that plaintiff's motion for class certification of her TILA claim should be granted.

*Perry* at 497 (citations omitted) (emphasis added). *See also, Zachary v. Chase Manhattan Bank, N.A.* 52 F.R.D. 532 (S.D. N.Y. 1971) (After noting that, "while inconvenient and costly to defendant, the identities of former Uni-Card holders can be ascertained by defendant," the court held that a class that consisted of over a million members would not be unmanageable.).

Defendants argue that users of the Goodings ATM likely came from countries other than the United States, and that this exacerbates the problems Defendants believe exist with identifying class members. E*Trade's Brief at 17. However, the notices acknowledged by Goodings to have been provided on the Goodings ATM regarding the transaction fee and those on the recently discovered ATM in Illinois were only directed to "U.S. Cardholders." Goodings First Amended Answer at 7; Certification attached hereto as Exhibit "A." To the extent the class definition includes residents of countries other than the United States, this Court may modify the definition to exclude such users.

In an apparent attempt to emphasize its argument that the effort involved in

14

identifying class members would take too much time and effort, Defendants list on page 17 of E*Trade's Brief four actions they believe must be taken in order to identify the class members. A review of the list reveals that Defendants have included two actions on the list that would not be required to identify the class members. E*Trade's Brief at 17; the third and fourth "bullet points" of the four listed by E*Trade.

As no discovery has been taken in this case, it is not clear to Plaintiff precisely what information regarding the identity of class members is in the possession of Defendants and what actions would need to be taken to identify class members. However, for the same reasons set forth above as to why reliance is not an issue to ultimately find Defendants liable under EFTA for the disclosure violations that at least one Defendant has admitted occurred, and contrary to Defendants' bullet points 3 and 4 on page 17 of E*Trade's Brief, discovery would not be required to be propounded on each class member. Assuming that discovery in this action doesn't reveal that identifying the class members will take any less effort than what Defendants have written would be required (bullet points 1 and 2 on page 17 of E*Trade's Brief), the only discovery that would be required in order to identify the class members would be: (1) to identify the banks with which transactions were made, and (2) to ask those banks the names of the class members who ran a transaction through that bank.

## VI.   PLAINTIFF HAS STANDING TO BRING THIS ONE COUNT ACTION

Goodings has raised the issue of whether Plaintiff has standing to represent the proposed class. Goodings believes that there is an issue as to whether Plaintiff relied on one of the other two fee disclosures Goodings alleges was provided for the use of the Goodings ATM. The Complaint filed in this action is a one-count complaint alleging a violation of a

15

very specific disclosure provision of EFTA. That is, it is alleged that every single class member used an ATM that was operated by Defendants, and that in every single transaction of each class member the Defendants failed to comply with the EFTA disclosure requirements regarding the transaction fee that was charged to the class members. EFTA provides that if an ATM operator fails to properly disclose the transaction fee charged, the operator is not entitled to collect any fee in connection with the transaction.[16] If an operator of an ATM fails to provide the required notices, as Plaintiff alleges in his Complaint, then that operator is not entitled to impose a transaction fee, regardless of the consumer's actual knowledge of the fee. It should be noted that even interpreting the facts alleged by Goodings in a light most favorable to Defendants, Defendants provided at least two conflicting disclosures as to the amount of the transaction fee to be charged to every class member. There is no way under these facts that a consumer could "know" what fee he was going to be charged.

Goodings has admitted that the required disclosures were not provided in at least 7,127 transactions. Plaintiff alleges that he was not provided the fee disclosures required by EFTA when he used the Goodings ATM. Plaintiff has standing to bring this action.

In the event this Court believes that due to Defendants' two conflicting disclosures Plaintiff's state of mind as to the fee to be charged is relevant to whether he has standing to represent the proposed class for the recovery of actual damages, the issue of whether Plaintiff has standing would only apply, as argued by Defendants, to whether the class is entitled to

---

[16] Title 15 USC § 1693b(d)(3)(C) provides in relevant part that "[n]o fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required" under EFTA unless the required notice is provided.

recover "actual damages sustained as a result of" Defendants failure to comply with the

EFTA disclosure requirements.  Plaintiff clearly has standing to represent the proposed class

in this action to recover damages other than "actual damages" as a result of Defendants'

EFTA violations.  Defendants have not argued otherwise.

However, if this Court concludes that Defendants are not entitled to retain the fees

charged to consumers, as provided by Title 15 USC § 1693b (d) (3) (C), and that the entire

fee charged (as opposed to the difference between the two fees disclosed) are not "actual

damages as a result of" Defendants non-compliance, then Plaintiff's state of mind as to what

fee he was to be charged is not an issue.

## VII. THE GOOD FAITH DEFENSE IS IRRELEVANT AND INAPPLICABLE

### A.   The Good Faith Defense is Irrelevant to the Issue of Class Certification

Goodings devotes almost seven pages of the Goodings Brief to a discussion of

whether it acted in good faith when it provided what Goodings admits were inconsistent

disclosures to consumers as to the fees they were to be charged when using the Goodings

ATM.[17]  This argument, and whether Goodings can provide the requisite factual proof to

support this argument, is irrelevant to this Court's determination of whether the proposed

class should be certified.  While Plaintiff has not propounded discovery on Goodings as to

this issue as of this date, Plaintiff is confident that it will be able to easily prove that

Goodings did not act in good faith when it charged consumers a transaction fee that was

higher that the fee actually disclosed for a time period of approximately 16 months.  Plaintiff

---

[17] See pages 10 through 16 of the Goodings Brief.

will present facts and argument on the issue of whether Defendants acted in good faith when that issue is before this Court.

**B.   <u>E\*Trade has Independent EFTA Liability</u>**

Defendants argue that because EFTA provides a good faith defense it would be necessary for there to be a mini-trial on the good faith defense issue for every retail merchant at which an E\*Trade ATM was located. E\*Trade's Brief at 19. E\*Trade's argument fails to recognize that as an operator of ATMs,[18] E\*Trade has liability for EFTA disclosure violations independently of the liability of any other operator of its ATMs. It is not necessary to conduct mini-trials on the good faith issue for every retail merchant because Plaintiff is only seeking relief against E\*Trade as an ATM operator, and is not seeking relief from any retail merchant other than Goodings for its operation of the Goodings ATM. As under TILA, where there may be more than one person responsible for providing TILA disclosures, there can be more than one operator of an ATM responsible for complying with the EFTA disclosure requirements.[19] If it is determined that E\*Trade was an operator of the Goodings ATM, independent liability would rest with E\*Trade. It is not necessary to join the retail merchants at which E\*Trade ATMs are located.

---

[18] It should be noted that Goodings has admitted in its First Amended Answer filed in this action that the following notice appeared on the ATM used by Plaintiff: "The operator of this ATM, E\*Trade Access, Inc., may charge a $2.00 fee to U.S. cardholders for withdrawing cash. The fee is added to the amount of your withdrawal and is in addition to any fees you may be charged by your financial institution." First Amended Answer of Goodings at 7. This notice is virtually identical to the notice on the E\*Trade ATM used by Lauren Miller. See Exhibit "A" to the Certification Pursuant to U.S.C. § 1746, which is attached as Exhibit "A" to this Motion.

[19] Title 12 CFR 213.3(c) and Comment 3(c) – 1.

## CONCLUSION

For these the reasons, this Court should grant Plaintiff's Motion for Class

Certification.

Respectfully Submitted,

Brian G. Pincket
Florida Bar No.: 501425
MILAM & HOWARD, P.A.
50 N. Laura Street, Suite 2900
Jacksonville, Florida 32202
Telephone: (904) 357-3660
Facsimile: (904) 357-3661

Lance A. Raphael, Esquire
Stacy Bardo, Esquire
The Consumer Advocacy Center
25 East Washington, Suite 1805
Chicago, IL 60602
Telephone: (312) 782-5808
Facsimile: (312) 377-9930

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished by regular mail this
___ day of October, 2003 to:

Todd Pittenger, Esq.
Lowndes, Drosdick, Doster, Kantor
& Reed
215 North Eola Drive
Orlando, Florida 32801

Attorneys for Defendant
Gooding's Supermarkets, Inc.

Douglas P. Lobel, Esq.
Joseph Yenouskas, Esq.
Morgan, Lewis & Bockius
1600 Tysons Blvd., Suite 1200
McLean, Virginia 22102

Attorneys for Defendant
E*Trade Access, Inc.

ATTORNEY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GILBERT POLO, individually
and on behalf of all
others similarly situated,

        Plaintiff,                        Case No.: 6:03-CV-134-ORL-28 JGG

v.

GOODING'S SUPERMARKETS,
INC., a Florida corporation, E*TRADE
BANK, a federal savings bank, E*TRADE
ACCESS, INC.,

        Defendants.
_____/

## CERTIFICATION PURSUANT TO 28 U.S.C §1746

I, Lauren Miller, hereby certify under 28 U.S.C. §1746 that:

1.      On August 27, 2003, I visited an "E*Trade Financial" ATM machine. The machine is located at the Old Orchard Shopping Center in Skokie, Illinois.

2.      The placard on the outside of the "E*Trade Financial" ATM machine stated that: "The operator of this ATM, E*Trade Access, Inc., may charge a $2.00 fee to U.S. cardholders for withdrawing cash." *See* Exhibit A.

3.      When I selected "withdraw" cash from the menu options, the ATM screen advised me that I might be charged a fee of $1.50 for a withdrawal. *See* Exhibit B.

4.      As a fee for withdrawing cash from the "E*Trade Financial" ATM machine, my August 27, 2003 receipt reflects that I was charged $1.50, not the $2.00 disclosed on the machine itself. *See* Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

**Exhibit "A"**

Executed on August ___, 2003

Lauren Miller

# FEE NOTICE

The operator of this ATM, **E✱TRADE** Access, Inc., may charge a $2.00 fee to U.S. cardholders for withdrawing cash. This fee is added to the amount of your withdrawal and is in addition to any fees that may be charged by your financial institution.

If you have any questions please contact your financial institution.

Exhibit "A"

E*TRADE

THE OWNER OF THIS TERMINAL MAY CHARGE A FEE OF $1.50 FOR A WITHDRAWAL.

THIS FEE IS IN ADDITION TO ANY FEES YOUR FINANCIAL INSTITUTION MAY CHARGE.

IF YOU AGREE TO THIS FEE AND WISH TO CONTINUE, PRESS YES.

IF YOU WISH TO CANCEL, PRESS NO.

Exhibit "B"

**E\*TRADE**
FINANCIAL

Exhibit "C"