UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:03-CV-134-ORL-28 JFGG

GILBERT POLO, individually,

      Plaintiff,

vs.

GOODING'S SUPERMARKETS, INC.,
a Florida corporation;  E*TRADE ACCESS, INC.,

      Defendants.

_____/

## GOODING'S SUPERMARKETS, INC.'S MEMORANDUM IN SUPPORT OF GOODING'S MOTION FOR SUMMARY FINAL JUDGMENT

The Defendant, GOODING'S SUPERMARKETS, INC., a Florida corporation ("Gooding's"), by and through its undersigned counsel, hereby files its Memorandum in Support of Gooding's Motion for Summary Final Judgment against Plaintiff, GILBERT POLO ("Polo"), on the grounds that the undisputed matters of record conclusively demonstrate that the purported EFTA violation  of which the instant lawsuit complains was entirely unintentional and the direct result of bona fide error that came about notwithstanding the implementation of maintenance and training procedures reasonably adapted to avoid any such errors, thereby disentitling Polo to any relief as against Gooding's under 15 U.S.C. §1693m(c).  In support thereof, Gooding's states:

### INTRODUCTION AND OVERVIEW

Polo filed a purported class action lawsuit[1] based on the undisputed fact that Polo used a Gooding's operated ATM on July 5, 2002 that: (i) had the EFTA required ATM FEE NOTICE

---

[1] This Court denied Polo's class certification motion on March 16, 2004 [Doc. 101], fully adopting the Report and Recommendation of Magistrate Judge Glazebrook [Doc. 94].  Polo recently renewed his class certification motion on June 2, 2004, to which Gooding's responded on June 14, 2004.  If liability is imposed, Polo has standing only to recover only his individual actual damages, if any ($0.50 or $2.00) and statutory damages of no more than $1,000.  An adverse liability determination could still have class-wide implications in the event the denial of class certification is reversed on appeal, necessitating that Gooding's expend $75,000 thus far to

showing the surcharge to be imposed was $2.00 in addition to a second disclosure right below the screen in boldface type that said "**ATM FEE $2.00**"; (ii) Polo received a receipt showing the ATM surcharge actually imposed was $2.00; (iii) the touch screen on the ATM inadvertently showed $1.50, which Polo admits he consented to pay; (iv) Polo never requested a refund or even advised Gooding's of the discrepancy between the notices given, instead responding by filing this lawsuit and then refusing a refund; (v) Gooding's relied on E*Trade to provide training and procedures regarding operation of the ATM's, adopted and followed those procedures including the holding of a training course and the maintenance of training materials at the store site, but in this isolated instance the reprogramming attempted by the trained Gooding's bookkeeper in charge of the ATM did not "take"; and (vi) Gooding's immediately corrected the surcharge screen from $1.50 to $2.00 on August 5, 2002, the very same day the error was reported.   These undisputed facts are derived from the Gooding's Answer [Doc. 28]; the Supplemental Declarations of Ray Vann and Anthony Marcus dated July 1, 2004; the prior Declarations of Anthony Marcus and Ray Van filed August 6, 2003 [Doc. 76] and Dale Dentlinger [Doc. 77]; Polo's March 22, 2004 and April 2, 2004 Responses to E*Trade's Discovery Requests; and the Gooding's November 18, 2003 Responses to Polo's Discovery. E*Trade's July 1, 2004 Memorandum in Support of E*Trade's own Summary Judgment Motion cites the Gooding's Answer conceding "the inadvertent failure of a Gooding's employee to reprogram the ATM at issue," but actually all the Answer [Doc. 28] concedes is an unintentional mistake and bona fide error.   What Gooding's has admitted is that the reprogramming of the ATM, although attempted, was unsuccessful and Gooding's wasn't advised of the problem until

---

defend this case.  As indicated in the Supplemental Declaration of Anthony Marcus, Gooding's only earned $3,653.50 in excess surcharges for the 7,127 ATM transactions during the time frame the unintentional bona fide error was in effect.  Gooding's could not refund those amounts because it doesn't know or have records that would show who those ATM customers were, only ATM card numbers without PIN's being available.

August 5, 2002 when the first customer complained and the disclosure screen was corrected. See Supplemental Declarations of Ray Vann (para. 8) and Anthony Marcus (para. 9) filed July 2, 2004, wherein Gooding's states "[t]he Lake Buena Vista ATM surcharge screen displayed the incorrect amount of $1.50 solely as the result of human or computer error, it being Gooding's intention to comply with the law and provide the requisite disclosures."

The foregoing explanation is unrebutted on this record, Gooding's having never denied, even in its Answer, that an unintentional bona fide error and mistake occurred at the Lake Buena Vista Store ATM. Because Gooding's also adopted, and by para. 4 of its Site Location Agreement (see August 6, 2003 Declaration of Anthony Marcus, Exhibit "A") was required to follow, the training and procedures regarding operation of ATM's provided by E*Trade, Gooding's implemented maintenance and training procedures reasonably adapted to avoid any such errors. Gooding's corrected the error immediately upon notification of same, and never had any problems with its other two ATM's. Because Polo was inadvertently overcharged $0.50, Gooding's is facing exposure for the $140,000 in attorney's fees Polo's attorneys claim to have incurred as of April 2, 2004 (see Plaintiff's Answer to E*Trade Interrogatory No. 8), most of which are attributable to unsuccessful efforts to achieve class action status with its obvious percussions should liability be found. Polo has no expert to establish what is unreasonable about the maintenance and training procedure of E*Trade that Gooding's implemented and followed, and it is respectfully submitted that the situation presented here is exactly what 15 U.S.C. §1693m(c) was intended to insulate an ATM operator like Gooding's from exposure against.

## THE EFTA

The Electronic Funds Transfer Act ("EFTA"), which like the Fair Debt Collection Practices Act ("FDCPA") and the Truth in Lending Act ("TILA") was passed as an amendment to the Consumer Credit Protection Act ("CCPA"), protects consumers by providing a "basic

759816

framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1328 (7th Cir. 1997) (citing 15 U.S.C. § 1693(b)). The electronic fund transfers covered by the EFTA have three components: (1) a transfer of funds; (2) that is initiated by electronic means; and (3) debits or credits a consumer account. Id. Significantly in this case, the EFTA was amended by the Gramm-Leach-Bliley Act, Pub.L. 106-102, 113 Stat. 1338 in 1999 to require disclosure of the amount of the transaction fee charged for using an ATM by both a sticker or sign on or near the ATM and through an "on-screen notice" during the ATM transaction. 15 U.S.C. §1693b(d)(3)(B)(ii). The Board of Governors of the Federal Reserve adopted revisions to Regulation E, which implements the EFTA, on March 9, 2001 with a mandatory compliance date of October 1, 2001. 12 CFR 205.16.

## BACKGROUND FROM PRIOR DECLARATIONS OF RAY VAN/ANTHONY MARCUS

Gooding's is a family-owned supermarket chain consisting of three stores. The Gooding's Supermarket to which the instant lawsuit exclusively relates is located at 12521 S.R. 535, Lake Buena Vista, Florida (the "Lake Buena Vista Store"). Gooding's has two other stores: (i) the International Drive store located at 2746 International Drive, Suite 120, Orlando, Florida (the "International Drive Store"); and (ii) the Celebration store located at 600 Market Street, Suite 110, Celebration, Florida (the "Celebration Store").

In 2001, Gooding's, like many grocers and retailers, elected to make available automated teller machines ("ATMs") in its stores for the convenience of its customers. Gooding's had never operated ATM machines before this time. Gooding's identified E*Trade as an established and reputable provider of ATM services. Gooding's selected E*Trade to be provide ATM services at its locations. The Gooding's employees who would be responsible for the operation

of the ATMs were required to attend an E*Trade training session before the ATMS went on-line, and Gooding's adopted the policies and procedures provided by E*Trade.

The initial ATM surcharge at each of the Gooding's locations was intended to be $2.00. However, E*Trade initially programmed the ATM machine at Gooding's Lake Buena Vista Store with a $1.50 surcharge amount. The on-screen disclosure and the sticker disclosure provided by E*Trade both reflected the incorrect $1.50 amount. Gooding's contacted E*Trade and informed them of the mistake before the ATM went on-line. E*Trade provided a new sticker bearing the correct $2.00 ATM fee disclosure, which Gooding's immediately placed on the ATM machine. E*Trade also provided instructions for changing the on-screen disclosure. Pursuant to Gooding's policy, the trained bookkeeper in charge of the Lake Buena Vista Store ATM was instructed to reprogram the on-screen surcharge disclosure in accordance with E*Trade's instructions. Afterwards, Gooding's called E*Trade to make sure that E*Trade received confirmation from its processor of the new surcharge amount.

The ATM at Gooding's Lake Buena Vista Store went on-line April 3, 2001 with a $2.00 transaction fee. Gooding's made sure the $2.00 transaction fee was disclosed to customers in two places on the ATM machine itself, including an additional, non-requisite sticker prominently displayed just below the screen. Polo's lawsuit is entirely premised on the fact that, as the unintentional result of either human or computer error in reprogramming the on-screen disclosure, the ATM screen continued to display the initially programmed erroneous amount of $1.50 rather than the correct $2.00 fee, even though there was a sticker right below the screen and another prominent notice disclosing the correct $2.00 amount. Additionally, Polo received an ATM receipt indicating the correct $2.00 surcharge amount. Polo did not report the mistake to Gooding's or request a refund when he realized the computer screen was in error. This unintentional error occurred only at the Lake Buena Vista Store, and was corrected as soon as it

was discovered (a customer reported it August 5, 2002, the date it was corrected). Neither the International Drive Store nor the Celebration Store are involved in the instant case because the unintentional error which is the subject hereof occurred solely at the Lake Buena Vista Store.

## THE $1.50 COMPUTER SCREEN DISCLOSURE WAS THE UNINTENTIONAL RESULT OF A BONA FIDE ERROR FOR WHICH GOODING'S IS LIABLE

Gooding's Lake Buena Vista Store's ATM went on-line April 3, 2001, before the amended Regulation E required compliance. Gooding's had never been an ATM Operator before, but Gooding's still made sure the $2.00 transaction fee was properly disclosed in two places on the ATM when the EFTA required only one. However, Gooding's attempt to reprogram the ATM surcharge screen to also disclose the $2.00 fee (it instead continued to display the $1.50 amount originally programmed by E*Trade) failed as the result of an inadvertent human or computer error. This mistake was the unintentional result of bona fide error for which 15 U.S.C. §1693m(c) imposes no liability. The mistake of which the instant lawsuit complains was entirely unintentional and the direct result of a bona fide error that came about notwithstanding the implementation of maintenance and training procedures reasonably adapted to avoid any such error, thereby disentitling Plaintiff to recover any monetary, injunctive, or other relief.

According to Polo, he used the ATM at Gooding's Lake Buena Vista Store on or about July 5, 2002. Plaintiff's Objections and Responses to E*Trade Access Inc.'s First Set of Interrogatories, ¶ 1. Polo further alleges that the screen of the Gooding's ATM informed him that he would be charged a fee of $1.50 if he continued with the transaction. Id. at ¶ 3. Polo agreed to pay the $1.50 fee. Id. Notwithstanding the $1.50 disclosure, Polo claims he was charged $2.00 for the transaction. Id. At that time, Polo received a receipt indicating that he was charged $2.00. Id. Despite the alleged discrepancy between the ATM screen disclosure and the

759816

6

receipt, Polo did not report the error or seek a refund from any Gooding's employee. Polo is

without knowledge of the two (2) notifications on the machines that said the ATM fee was $2.00.

The statutory FEE NOTICE that appeared on the ATM machine at the Gooding's Lake

Buena Vista Store at the time of Polo's alleged transaction stated the following:

### "FEE NOTICE

The operator of this ATM, E*Trade Access, Inc., may charge a $2.00 fee to U.S. cardholders for withdrawing cash.  The fee is added to the amount of your withdrawal and is in addition to any fees you may be charged by your financial institution.
If you have any questions, please contact your financial institution."

In addition to the statutorily required notice, Gooding's also caused a bold faced typed notice to

be taped right under the ATM computer screen from April 3, 2001 to August 5, 2002 which read:

### ATM FEE $2.00

The instant lawsuit solely deals with the bona fide but unintentional error by which Polo

would have apparently seen the following computer notification screen:

### "FEE NOTICE U.S. CARDHOLDERS

The owner of this terminal will deduct $1.50 from your account as its fee from you for the transaction you have chosen.  This fee is in addition to any fee your financial institution may charge.

Cancel transaction - Pay no fee                              I agree to fee - continue"

The ATM receipt Polo received showed the actual terminal fee charged, which was

$2.00.  At no time prior to August 5, 2002 does Gooding's management at that store location or

at headquarters recall any customer complaining or seeking a refund of the $0.50 differential or

the entire $2.00 ATM Fee, it being Gooding's contention that all customers using the ATM

would have known the fee being charged to them was $2.00.  It was as a result of a single

complaint received on August 5, 2002 in which a $0.50 refund was requested and given that the

surcharge screen was in fact changed.  The Lake Buena Vista store is the only place there was a technical issue with the form of notification given due to a bona fide error.

## UNDISPUTED RECORD FACTS FROM RAY VANN DECLARATIONS

The Ray Vann August 6, 2003 Declaration filed again herewith attaches as **Exhibits "1"** and **"2"** authenticated photographs of the Lake Buena Vista ATM.  These photographs represent a true and accurate depiction of the ATM in question during all times from April 3, 2001 when it went "on-line" until the present.  <u>Declaration of Ray Vann at ¶¶ 2-3</u>.  The only difference is that, on October 9, 2002, the ATM fee was increased from $2.00 to $2.50, so the notice which now states "ATM FEE $2.50" below the screen as well as the other FEE NOTICE posted on the ATM machine said "$2.00" at all times from April 3, 2001 until the surcharge was changed to "$2.50". <u>Id</u>.  During all times these notifications said $2.00, it was correct.  <u>Id</u>.  Another photograph showing the $2.00 Fee Notices on the ATM is attached to Ray Vann's Supplemental Declaration.

Ray Vann's Declaration further states that at no time prior to August 5, 2002 did any Lake Buena Vista Store customer complain or was it otherwise brought to his attention or that of other Gooding's personnel that there might be an error in what the computer screen itself showed the surcharge amount to be.  <u>Id</u>. at ¶ 4.  On August 5, 2002, records reflect it was brought to the attention of the bookkeeper responsible for the Lake Buena Vista Store ATM that the notice on the screen said customers would be charged a fee of $1.50 if they continued with the Transaction.  <u>Id</u>.  This unintentional mistake was entirely the result of a bona fide error that occurred despite the implementation of procedures reasonably designed to avoid such errors.  <u>Id</u>.  Gooding's corrected the error that same day after contacting E*Trade for surcharge reprogramming instructions.  <u>Id</u>.  During all times from April 3, 2001 until August 5, 2002, **"ATM FEE $2.00"** was shown right below the screen in the same place **Exhibits "1"** and **"2"** now show "ATM FEE $2.50" right below the screen, and the statutorily required FEE NOTICE

that also appeared on the ATM Machine showed a $2.00 ATM fee was being charged as well. Id. The ATM Machine receipt at all such times showed the ATM Fee charged was $2.00. Id.

The Supplemental Declaration of Ray Vann further establishes that Gooding's maintained procedures reasonably adapted to avoid errors in its ATM surcharge disclosures. Gooding's required that all personnel responsible for the ATMs attend a training course conducted by E*Trade which included surcharge disclosure information. Gooding's adopted the procedures of E*Trade, a reputable, nationwide provider of ATM services. Gooding's required that the ATM surcharge screen be programmed by trained personnel. Gooding's maintained at each of its locations manuals which contained information on programming the on-screen surcharge disclosure. Gooding's placed an additional, non-requisite disclosure on each of its ATMs immediately below the screen to ensure that ATM users were notified of the surcharge. Gooding's procedures effectively prevented any surcharge disclosure errors on the body of the Lake Buena Vista Store ATM itself, and no errors occurred at any other Gooding's location.

## UNDISPUTED RECORD FACTS FROM ANTHONY MARCUS DECLARATION

The Anthony Marcus Declarations reiterates some of the same facts as the Ray Vann Declaration, albeit with a different evidentiary foundation. The Marcus Declarations clarify that on August 5, 2002, Gooding's learned that the surcharge screen said $1.50 rather than $2.00, contrary to the instructions given by Gooding's at the time of set-up as the result of a bona fide error. Id. August 5, 2002 is the date Gooding's received the Surcharge Reprogramming Instruction from E*Trade attached to the Anthony Marcus Declaration as **Exhibit "C,"** August 5, 2002 also being the date Gooding's followed said instructions and changed the surcharge amount shown on the notification screen from $1.50 to $2.00. Id. at ¶ 10. The notification screen apparently showed $1.50 rather than $2.00 prior to August 5, 2002 through no fault of Gooding's and as a result of bona fide error. Id. The ATM machine had two (2) other $2.00

FEE NOTICES affixed to the machine during the entire April 3, 2001 to August 5, 2002 time frame, one of which was directly below the computer notification screen in bold faced type. Id.

The statutorily required FEE NOTICE that appeared on the ATM machine at the Gooding's Supermarket from April 3, 2001 to August 5, 2002 explicitly stated that the operator of the ATM may charge a $2.00 fee to U.S. cardholders for withdrawing cash and that if the consumer had any questions, they should contact their financial institution. Id. at ¶ 11.

At no time prior to August 5, 2002 does Gooding's management at headquarters recall any customer complaining or seeking a refund of the $0.50 differential or the entire $2.00 ATM Fee.  It was as a result of a single complaint received on August 5, 2002 in which a refund was requested and given that the surcharge screen was in fact changed.

The Supplemental Declaration of Anthony Marcus, like that of Ray Vann, establishes that Gooding's maintained procedures reasonably adapted to avoid errors in its ATM surcharge disclosures.  As a new ATM operator, Gooding's relied on the training and materials provided by E*Trade, and Gooding's adopted and followed E*Trade's proven procedures.  Gooding's was aware that the law requires every ATM terminal that charges a transaction fee to post a notice of the surcharge on the ATM itself and on the ATM computer screen.  The Lake Buena Vista ATM computer screen apparently displayed the incorrect surcharge amount of $1.50 rather than $2.00 solely as the result of human or computer error, it being Gooding's intention at all times to comply with the law and provide all requisite disclosures.  This is evidenced by the fact that no such errors occurred at any other Gooding's location, by Gooding's provision of an additional, non-required fee disclosure immediately below the ATM screen to ensure that customers would understand they may be charged a $2.00 fee, by Gooding's requirement that employees involved in ATM operations attend a training session provided by E*Trade, by Gooding's adoption and

759816

implementation of E*Trade's procedures, and by Gooding's immediate correction of the ATM

screen once the unintentional error was reported.

Given that discovery has closed, these facts are unrefuted, Polo has no expert, a bona fide

error did occur, and E*Trade's training and maintenance procedures that Gooding's followed are

presumptively valid, no trial is needed and even the foregoing recital of facts is redundant. It is

respectfully submitted that this Court should find for Gooding's and E*Trade and against Polo.

## ARGUMENT

**I.    THE MISTAKE OF WHICH POLO COMPLAINS WAS UNINTENTIONAL AND THE RESULT OF A BONA FIDE ERROR THAT OCCURRED NOTWITHSTANDING THE IMPLEMENTATION OF MAINTENANCE AND TRAINING PROCEDURES REASONABLY ADAPTED TO AVOID ANY SUCH ERROR, THEREBY DISENTITLING POLO TO ANY RELIEF.**

Upon research, it appears that the only case to discuss the statutory bona fide error

defense in the context of an EFTA claim is Feinman v. Bank of Delaware, 728 F.Supp. 1105 (D.

Del. 1990). In that case, the plaintiffs were denied access to their bank funds via ATM

withdrawal due to the defendant bank's failure to comply with the terms and conditions of an

account agreement between the parties. The court found that the bank violated the EFTA when

it failed to remove the restriction on the plaintiffs' access to their money through ATMs due to

either unintentional computer or human error. Id. at 1115. The court further found that the

failure to remove the restriction timely was a bona fide error and was not intentional in spite of

procedures reasonably adapted to avoid any such error. Id. This is similar to the situation here,

where the ATM screen disclosure was incorrect due to unintentional computer or human error.

Although EFTA case law is sparse, many federal and state cases have determined what

constitutes a TILA violation which "was not intentional and resulted from bona fide error

notwithstanding the maintenance of procedures reasonably adapted to avoid any such error"

within the meaning of § 130(c) of TILA (15 U.S.C. § 1640(c)), bona fide error language identical

759816

to that contained in the EFTA (15 U.S.C. § 1693m(c)).  TILA as a general rule strictly requires lenders and creditors to comply with its disclosure requirements, making no exception for *de minimis* or merely technical errors.  See e.g. Smith v. Fidelity Consumer Discount Co., 898 F.2d 896 (3d Cir. 1990).  However, as with the EFTA, the bona fide error exception to TILA shields creditors and assignees from liability where they show that a violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.  This provision was added out of concern that otherwise, creditors and lenders would be held strictly liable for unintentional mistakes of the kind which would unavoidably occur at least occasionally.  See e.g. Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161 (7th Cir. 1974); Ratner v. Chemical Bank, 329 F. Supp. 270 (S.D.N.Y. 1971).

A.   **The purported mistake of which Polo complains was unintentional and the result of a bona fide error.**

In the instant case, the Lake Buena Vista Store ATM provided for the disclosures required under the EFTA, that is, the fee disclosure located on the ATM machine itself, and the fee disclosure located on the ATM screen.  An additional, non-requisite third disclosure was placed in plain view immediately below the screen.  Of the three disclosures, only one, the on-screen disclosure, was erroneous.  This is analogous to the circumstance where a TILA disclosure form provides for the proper disclosures, but an error results from a failure to complete the form correctly.  In such cases, courts have often found that the error was "bona fide" or simply "clerical" in nature, resulting in no liability.

Under the facts and circumstances of the following cases, the courts found that a failure to complete a form properly constituted an unintentional violation and bona fide error under § 130(c) of TILA.  A mobile-home seller's failure to check a box on a security agreement form was found to constitute a bona fide error in Henning v. Daniels, 653 F.2d 104 (4th Cir. 1981).  The

759816

form in question had a section for insurance premiums and other charges which stated that there was no insurance coverage unless the premium was shown and the appropriate box checked. The form was filled out by the defendant, who included the correct financial information reflecting the charge for comprehensive insurance coverage, but failed to check the appropriate box on the security agreement.  The court assumed without deciding that this was a technical violation of the Truth in Lending Act, holding that even if it was a technical violation, the defendant was entitled to the bona fide error defense, since the defendant's uncontroverted testimony was that the omission was simply an oversight on his part.

In Bailey v. Defenbaugh & Co. of Cleveland, Inc., 513 F. Supp. 232 (N.D. Miss. 1981), the court found that a lender's failure to obtain both spouses' signatures on an insurance notice and insurance application accompanying a small loan application was a bona fide error under § 130(c) of TILA, where the lender's procedures for detecting this kind of error were adequate. The court found that the error in question was unintentional and bona fide in the sense that the defendant did not deliberately omit the plaintiff wife's signature.  The court noted that several other courts had implied that § 130(c) covered failure to fill in a blank properly and, more importantly, that courts had not inquired whether errors were clerical in a vacuum, with the alternative to a "clerical" error being simply "not clerical," but rather had asked whether an error was clerical as opposed to being an error in interpretation of law.  In finding that the error in question was more in the nature of a clerical error than an error of law, the court found particularly persuasive the fact that the defendant knew it was legally required to obtain the wife's signature on the insurance notice, yet failed to do so by human error.  Rejecting the plaintiffs' argument that the fact that the form only contained one signature line illustrated that the defendant misapprehended TILA, the court concluded that the lack of another line on the form was of no consequence in light of the defendant's admission that his company had erred.

759816

13

The court also noted that testimony that the defendant had violated truth in lending laws in only one instance in three years was also indicative that the error was clerical, since widespread, systematic errors would presumably have resulted in numerous violations. This situation is similar to the present case, where Gooding's was aware of the legally required disclosures, but due to human or computer error failed to provide the correct fee amount on the ATM screen. Like the defendant in Bailey, Gooding's admitted it had erred, and has done so since the institution of this action by Polo. Further, as in Bailey, the absence of similar errors is indicative that the error was unintentional and clerical in nature, and not a widespread, systematic error.

In Washington Motor Sales v. Ferreira, 131 N.J. Super. 328 (N.J. Dist. Ct. 1974), judgment aff'd, 140 N.J. Super. 529, certification granted, 72 N.J. 455 (1976) and judgment aff'd, 75 N.J. 136 (1977), the court found that an automobile dealer's failure to have the buyer date as well as sign the credit life insurance authorization on the installment sales contract was a bona fide error under § 130(c) of TILA. The dealer produced the testimony of its salesman that he advised the buyer of the availability of life insurance and, when the buyer accepted such insurance, asked him to sign and date the authorization, that the buyer forgot to date the signature, and that the dealer did not notice the error. The court found such evidence sufficient to meet the requirement that a creditor show by a preponderance of the evidence that the violation was unintentional, and therefore found that under the circumstances, the simple omission of the date was an unintentional bona fide error excused under § 130(c).

As in the cases above, Gooding's provided the statutorily mandated disclosures. However, due to unintentional bona fide computer or human error, the disclosure on the screen of the Lake Buena Vista Store ATM was inadvertently incorrect. Both of the disclosures located on the body of the machine itself, as well as the ATM receipts and all of the disclosures located

on ATMs at Gooding's other stores, were correct. Under these circumstances, this mistake was clearly nothing more than an unintentional bona fide error, excused under 15 U.S.C. § 1693m(c).

## B.   The unintentional bona fide error of which Polo complains occurred notwithstanding the implementation of procedures reasonably adapted to avoid such errors.

The error on the surcharge screen of the Lake Buena Vista Store ATM occurred notwithstanding the implementation of procedures reasonably adapted to avoid such errors. Because it was the first time Gooding's had ever operated an ATM, Gooding's required that all employees who would be responsible for the ATM attend a training course that included surcharge disclosure information. Gooding's adopted the time-proven procedures of E*Trade, a reputable ATM service provider. Gooding's maintained manuals dealing with surcharge disclosures and the programming of the ATM surcharge screens, and only allowed trained employees to program the surcharge screens by following detailed instructions provided by E*Trade. E*Trade was contacted and provided instructions in every instance Gooding's sought to reprogram the disclosure screen. Gooding's placed an additional, non-requisite fee disclosure on each ATM machine directly beneath the screen to ensure that no ATM user would miss the surcharge disclosure. Gooding's good-faith effort to comply with the EFTA is sufficient to establish that its unintentional error is within the scope of the bona fide error defense, as the steps which Gooding's took to ensure compliance with the EFTA establish that the error occurred notwithstanding the fact that Gooding's maintained reasonable procedures to avoid such errors.

Under the facts and circumstances of the following cases, the courts held or suggested that a defendant's measures to avoid unintentional violations or bona fide errors were sufficient to permit the defendant to invoke § 130(c) of TILA. A department store chain succeeded in establishing that its mailing of an unsolicited credit card occurred notwithstanding a comprehensive procedure designed to prevent such an error in <u>Jacobson v. Stern's, Div. of Allied</u>

Stores of N.Y., Inc., 1985 WL 3842 (S.D.N.Y. 1985) [unpublished opinion].  The defendant established that both it and the company hired to make telephone solicitations knew that it was unlawful to mail unsolicited credit cards to potential customers, and produced the testimony of its new accounts manager that its basic criterion for issuing new credit cards was that the customer provide either oral or written permission.   The telephone solicitation company maintained written guidelines, instructional materials, and procedures designed to prevent issuance of credit cards to persons who did not expressly request them.  The court found that this unrebutted evidence of strict compliance directives, together with the defendant's practice of mailing the cards with a returnable postage-free card, providing prospective customers with a cost-free method to lodge complaints and errors, was sufficient to meet the defendant's burden of proving by a preponderance of the evidence that any error which resulted was unintentional and the result of a bona fide error notwithstanding the defendant's procedure to prevent such an error.

In Chittester v. LC-DC-F Emp. of G.E. Federal Credit Union, 384 F. Supp. 473 (W.D. Pa. 1974), the court found that a credit union's failure to give a form containing certain TILA disclosures to the cosigner of a judgment note resulted from a bona fide error notwithstanding maintenance of procedures reasonably adapted to prevent such error.

In Welmaker v. W. T. Grant Co., 365 F. Supp. 531 (N.D. Ga. 1972), a case following the view that good-faith effort to comply with § 130(c) TILA is sufficient to establish that a legal error is within the scope of the bona fide error defense, in which the court noted the steps which the defendant had taken in developing its TILA forms to ensure that the forms complied with TILA were sufficient to prove that the violation had occurred notwithstanding the fact that the defendant maintained reasonable procedures to avoid such errors.

In Gilstrap v. Heights Finance Corp., 1986 WL 27587 (C.D. Ill. 1986) [unpublished opinion], a case in which the stated annual percentage rate was allegedly indecipherable due to

759816

16

slipped carbons, the court found that even if it had not found the entry in fact to be readable, it would have found the error subject to the clerical-error defense due to the fact that the defendant had a sufficient procedure for detecting this type of error. The defendant stated in its motion for summary judgment that it prepared "loan sets" including the disclosure statement on a computer and that the documents were then reviewed by the defendant's employee twice, once with the borrower, a back-up procedure found to be sufficient to satisfy § 130(c) of TILA. The court found that the procedures adopted by the defendant, use of a computer seconded by human review could entitle the defendant to the use of the bona fide error defense.

Similarly, in <u>Doubet v. USA Financial Services, Inc.</u>, 714 F. Supp. 980 (C.D. Ill. 1987), the court held that the successor of the same defendant as in the preceding case, making a similar error, the accidental insertion of the term "none" in the blank for the annual percentage rate on the disclosure statement, was entitled to a defense under § 130(c) of TILA, based on its evidence of a satisfactory procedure to prevent errors of this type. The court noted that the defendant conducted both an initial review and a double check of the first review, and, as it had previously found, this procedure was sufficient to satisfy § 130(c), thus entitling the defendant to summary judgment as to this particular error.

The court found that a procedure to detect arithmetical errors was adequate in <u>Hutchings v. Beneficial Finance Co. of Oregon</u>, 646 F.2d 389 (9th Cir. 1981), a case in which a retail installment contract misstated the deferred payment price, stating that it was $859.66 when in fact it was $859.76. The record showed that plaintiffs had purchased movie equipment from the defendant seller, whose employee had prepared the retail installment contract using printed forms drafted by the defendant finance company. Employees who filled out the contracts had attended a class conducted by the finance company, which also furnished them with charts to compute the interest rate, finance charge, and number of payments. The court noted that §

759816

130(c) of TILA does not specify the type of system a creditor must maintain to avoid liability, leaving the exact nature of the mechanism undefined. The court concluded that the finance company's system of reviewing the deferred payment price in its contracts met the requirements of § 130(c), since an employee of the seller which the finance company had trained had initially calculated the figure using a chart prepared by the finance company, and a finance company employee had then checked this calculation by adding machine. The court specifically declined to hold that it was necessary for a creditor to verify arithmetic by computer.

The court found that a defendant had sufficient error-avoidance procedures in <u>Matter of Sharif</u>, 23 B.R. 519 (N.D. Ga. 1982), a case in which the court found that the slight displacement of a figure due to an apparent failure to properly align the form in a typewriter was the type of clerical error subject to § 130(c) of TILA. The form, part of a combined note and disclosure form used in a loan agreement, disclosed the correct amount of the cash advance; however, the figure was typed partly in a darkened area slightly outside the box provided on the form. Noting that the defendant had filed an undisputed affidavit establishing that procedures reasonably adopted to avoid printing errors were in force and effect at the time the defendant negotiated the loan agreement in question, the court concluded that the § 130(c) defense was available.

In <u>Foundation Plan, Inc. v. Breaux</u>, 347 So. 2d 256 (La. 1977), the court found that a finance company established that it had a sufficient procedure for avoiding errors in calculating monthly payments where it required employees to use a table, rather than computing the payment amount themselves. The finance company conceded that it had erroneously stated the borrower's monthly payment as $42, when the actual payment at the stated interest rate should have been $41, and presented the testimony of its president that employees determined the monthly payment, finance charge, and total payments by reference to a published table. In using the table to copy information onto the disclosure statement, its loan manager had apparently

skipped down a line.  The court found that the finance company maintained a procedure reasonably adapted to avoid clerical and mathematical errors, since its procedure of requiring an employee to begin with the amount financed, and obtain other information from the published table, eliminated mathematical calculation and was reasonably designated a clerical error.  In so holding, the court implicitly rejected the dissent's argument that an error in reading across a 13-line table was so readily foreseeable that the defendant should have been required to show the maintenance of procedures reasonably adapted to avoid this specific type of error.

Gooding's trained its employees and made every effort to ensure that its ATM users were made aware of the ATM surcharge.  Gooding's adopted and followed the procedures provided by E*Trade.  Gooding's called E*Trade after programming the surcharge screen to make sure that E*Trade received confirmation from its processor of the new surcharge amount.  However, in programming the surcharge screen, Gooding's bookkeeper either committed human error or a computer error occurred.  The error occurred despite Gooding's procedures adapted to ensure disclosure of its ATM surcharge fees pursuant to the EFTA.  The printed disclosures placed on the ATM machine itself and the ATM receipts disclosed the correct $2.00 surcharge amount.  No such error occurred at Gooding's other locations.  Because the error was unintentional, and because Gooding's maintained procedures adapted to avoid disclosure errors, Gooding's cannot be found liable pursuant to the bona fide error defense contained in 15 U.S.C. §1693m(c).

## II.   THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND GOODING'S IS ENTITLED TO SUMMARY JUDGMENT.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to summary judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In this case, the facts set forth in the declarations of Ray Vann and Anthony Marcus are

undisputed.  On those facts, Gooding's is entitled to summary judgment as a matter of law based upon the authorities and for the reasons set forth in the preceding section.

Summary judgment is an appropriate vehicle for adjudicating a statutory bona fide error defense where there is no genuine issue as to any material fact.  In <u>Lewis v. ACB Business Services, Inc.</u>, 135 F.3d 389 (6th Cir. 1998), the Sixth Circuit affirmed a summary judgment granted to the defendant where the defendant had established its bona fide error defense to the Plaintiff's FDCPA claim.  <u>Id.</u> at 401.  In <u>Jenkins v. Heintz</u>, 124 F.3d 824 (7th Cir. 1997), the district court granted the defendants summary judgment after interpreting the FDCPA's bona fide error provision and concluding that defendants' actions met the statutory requirements for a valid defense.  <u>Id.</u> at 826.  The Seventh Circuit affirmed on appeal.  <u>Id.</u>  <u>See also</u> <u>Johnson v. Riddle</u>, 296 F.Supp.2d 1283 (D. Utah 2003) (granting defendant's motion for summary judgment where defendant established through undisputed fact a bona fide error defense to the FDCPA claims against him); <u>Frye v. Bowman, Heintz, Boscia and Vician, P.C.</u>, 193 F.Supp.2d 1070 (S.D. Ind. 2002) (granting summary judgment in favor of defendant where defendant established bona fide error defense under the FDCPA); <u>Nigh v. Koons Buick</u>, 143 F.Supp.2d 563 (E.D. Va. 2001)(TILA bona fide error defense applied, but not limited to, clerical and calculation errors).

## CONCLUSION

Here, as in the above-cited cases, there is no genuine issue as to any material fact regarding Gooding's statutory bona fide error defense because Gooding's has established what happened and E*Trade's procedures for the avoidance of such errors that Gooding's followed have not been proven to be unreasonable.    Polo cannot even say he was misled because he received the $2.00 receipt, presumably saw the two (2) different $2.00 ATM Fee disclosures on the outside of the machine, and went to see his lawyer rather than asking for a refund.    Liability for actual or statutory damages should be denied and summary judgment for Gooding's entered.

759816

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished *by United States Mail delivery* this _____ day of June, 2004 to DOUGLAS LOBEL, ESQUIRE AND DAVID A. VOGEL, ESQUIRE, Arnold & Porter, 1600 Tysons Boulevard, Suite 900, McLean, Virginia 22102; and LANCE RAPHAEL and STACY BARDO, The Consumer Advocacy Center, P.C., 180 West Washington, Suite 700, Chicago, Illinois 60602; BRIAN G. PINCKET, ESQUIRE, Milam & Howard, P.A., 50 N. Laura Street, Suite 2900, Jacksonville, Florida 32202.

 

**T. TODD PITTENGER, ESQUIRE**
Florida Bar No. 0768936
**MORRIS RICHARDSON, ESQUIRE**
Florida Bar No. 0349800
Lowndes, Drosdick, Doster, Kantor &
   Reed, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, FL  32802-2809
Telephone:  407-843-4600
Facsimile:  407-423-4495
Attorneys for Defendant,
Gooding's Supermarkets, Inc.